# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICOLE L. HANTZ, <br> f/k/a NICOLE OLDHAM, <br><br> Plaintiff, <br><br> v. <br><br> DIVISION OF STATE POLICE, <br> DEPARTMENT OF SAFETY & <br> HOMELAND SECURITY, <br> STATE OF DELAWARE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 21-801-RGA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT'S MEMORANDA OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Kenneth L. Wan (#5667)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
*Attorney for Defendant*

DATE:  August 30, 2021

## PROCEDURAL BACKGROUND

On June 1, 2021, Plaintiff Nicole Hantz ("Hantz") filed her initial Complaint with the Court. D.I. 1. On July 7, 2021, Plaintiff served the Complaint upon Defendant Division of State Police, Department of Safety & Homeland Security, State of Delaware ("DSP"). D.I. 4. On July 14, 2021, Hantz filed her First Amended Complaint ("FAC"). D.I. 5. The parties then stipulated that DSP may respond to the FAC by August 30, 2021. D.I. 6. This is DSP's Motion to Dismiss Hantz's FAC pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

### *The Complaint*

Hantz's FAC alleges claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Delaware Discrimination in Employment Act ("DDEA") in connection with her employment as State Trooper with the DSP.  Hantz was a Trooper with the DSP from 2002 to December 31, 2018. FAC, attached as Exhibit A, at 2. Hantz claims that she experienced sexual discrimination, retaliation, and a hostile work environment, during her employment with DSP.

*General Allegations*

Hantz claims that, from 2002 to approximately July of 2011, she reported four incidents of harassment by Trooper Smyk. Ex. A. at 5-6. Hantz claims that the initial incident involved Trooper Smyk sending an e-mail falsely claiming Hantz conducted a vehicle stop with her child in the car and was subsequently carjacked. Ex. A at 5. Hantz claims she reported the conduct to Sergeant Dean, who then mocked her. Ex. A at 5. Hantz does not provide any factual allegations regarding the other incidents involving Trooper Smyk.

Hantz further alleges that, from 2002 to approximately May of 2007, unidentified individuals vandalized her patrol vehicle and mailbox. Ex. A at 6. She also claims that unidentified

individuals damaged her campaign hat during that time frame. Ex. A at 6. Hantz reported these incidents to Sergeant Hardy. Ex. A at 6. Hantz alleges that these incidents were in connection with her high arrest rate. Ex. A at 6. Hantz further claims senior male troopers discouraged her from producing high arrest numbers because it caused less productive male troopers to fall below the troop average. Ex. A at 6-7.

Hantz further claims that, while certified to teach Krav Maga (a martial art), DSP prevented her from training other troopers. Ex. A at 9. Hantz, however, was able to teach Ocean View Police Department those defensive tactics. Ex. A at 9. Hantz provides no timeline for when this occurred.

*Collision Reconstruction Unit – May 2007 to January 2013*

Hantz worked in the Collision Reconstruction Unit ("CRU") as a fatal investigator from May 2007 to January of 2013. Ex. A at 3-4. During that time period, Hantz alleges that she was required to deliver more death notifications than her male peers in the CRU. Ex. A at 7. Hantz also alleges that a Sergeant Dean assigned Hantz to more matters where she personally knew the deceased individual than her male counterparts. Ex. A at 7.

*Executive Protection Unit – January 2013 to November 2016*

Hantz worked in Executive Protection Unit ("EPU") from January of 2013 to November of 2016. Ex. A. at 4. During this time, Hantz claims that she was not provided with housing or commuting benefits given to male troopers.  Ex. A at 10-11. In November of 2016, Hantz alleges that Sergeant Mitchell, a male, spread false rumors about Hantz. Ex A. at 11. Hantz reported the conduct to Captain Layfield, who failed to address Sergeant Mitchell's behavior. Ex. A at 12. Hantz also alleges that, during her time in the EPU, Corporal Rossi, a male, harassed her during a business trip. Ex. A at 12-16. Hantz claims that Corporal Rossi attempted to stay in the same hotel room as herself, and that she was missing a pair of her underwear when she returned from her trip.

2

Ex A. at 13-14. Hantz also claims that, when she was in the car with Corporal Rossi, he would pretend to abruptly brake and attempt to hold Hantz back in the seat, but did so to touch Hantz's breasts. Ex. A at 13. She reported the conduct to both Colonel McQueen and First Lady Markell. Ex. A. at 13-14. Hantz also alleges that, when she was in the EPU, she reported misconduct of other EPU troopers, which was not rectified. Ex. A at 16.

<u>Troop 4 – November 2016 to February 2018</u>

Hantz worked at Troop 4 from November of 2016 to February of 2018. Ex. A at 4. Hantz alleges that, when she worked at Troop 4, male led shifts were assigned ten troopers, while female led shifts were only provided eight troopers. Ex. A at 9-10. Hantz claims that she reported this issue to Lieutenant McColgan, Captain Layfield, and other male supervisors. Ex. A. at 10.

Hantz alleges that, on November 14, 2017, she got into an argument with Lieutenant McColgan in his office regarding the execution of a search warrant. Ex. A at 18. During the argument, Lieutenant McColgan placed his hands on Hantz's breast and pushed her out of the office. Ex. A at 18. Hantz alleges that Lieutenant McColgan never pushed male Sergeants. Ex. A at 18.

Hantz further alleges that, on November 15, 2017, Captain Layfield falsely accused her of insubordination and conduct unbecoming an officer due to the argument with Lieutenant McColgan. Ex. A at 18. Hantz claims that, from November 16-17, 2017, Captain Layfield and Lieutenant McColgan harassed her and attempted to make her think she could not handle work-related stress. Ex. A at 19.

While at Troop 4, Hantz also alleges that Lieutenant McColgan harassed Hantz on an almost daily basis in writing, sending her e-mails that belittled Hantz. Ex A. at 16-17. Hantz claims

3

she reported this conduct to Captain Layfield, who told Hantz that McColgan did not get along with anybody, including Sergeant Mitchell, a male trooper. Ex. A at 17.

*Troop 5 and End of Employment*

Hantz claims that, on January 29, 2018, Captain Layfield called her while she was on vacation and informed her that she was being transferred to Troop 5, effective March 4, 2018. Ex. A at 21. On February 7, 2018, Hantz's doctor ordered her to take indefinite medical leave for stress and depression. Ex. A at 21. On February 9, 2018, Hantz e-mailed her doctor's note to Captain Layfield. Ex. A at 21-22. That same day, Hantz alleges that Captain Layfield texted a copy of the doctor's note to an unauthorized person and told a Troop 5 Lieutenant that Plaintiff was going out on leave because she was mentally handicapped. Ex. A at 22.

From February 9, 2018 to December 31, 2018, Hantz went out on medical leave. Ex. A at 23. At that time, Hantz claims that her e-mail access was terminated, but male troopers maintain e-mail access until they retired. Ex. A at 23. On October 31, 2018, Colonel McQueen notified Hantz that, effective December 31, 2018, her employment with DSP would end. Ex. A at 23.

As a result of the aforementioned events, Hantz alleges five claims against DSP: Count I – Hostile Work Environment, Count II – Involuntary Transfer, Count III – Involuntary Termination of Employment, Count IV – Involuntary Transfer in Retaliation for Opposing Illegal Practices, and Count V - Involuntary Termination in Retaliation for Opposing Illegal Practices. Ex. A at 26-30.

*The Charge*

On October 23, 2018, Hantz filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). Exhibit B at 2.[1] Hantz filed the Charge while still on leave. Ex. B at 1-2. The Charge does not contain all of the allegations set forth in the FAC. The Charge fails to allege any facts that Hantz had to handle matters where she personally knew the deceased individual while she was a fatal crash investigator in the EPU. Further, the Charge fails to contain any facts regarding the business trip with Corporal Rossi. The Charge is also devoid of any facts or allegations that Lieutenant McColgan harassed Hantz on an almost daily basis while Hantz worked at Troop 4. The Charge also does not contain any facts about DSP terminating Hantz's e-mail access, nor does it allege that DSP forced Hantz out on medical leave. Importantly, the Charge does not contain any facts or allegations regarding Hantz's termination from employment. Notably, Hantz filed the Charge on October 23, 2018. However, DSP did not notify Hantz that of her termination (effective December 31, 2018) until October 31, 2018.

In the Charge, Hantz states that she requested to be transferred out of the EPU in October of 2016, resulting in her transfer to Troop 4. Ex. B at 2.

**ARGUMENT**

*Standards of Review*

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Siwulec v. J.M. Adjustment Services, LLC*, 2012 WL 666649,

---

[1] The Charge may be considered without converting the instant motion to dismiss into a motion for summary judgment. *See, Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) (finding that the attachment of an EEOC charge to a motion to dismiss did not convert the motion to one for summary judgment because the charge was central to the complaint.).

at *2 (3d Cir. Mar. 1, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a plaintiff must allege facts that 'raise a right to relief above the speculative level....'" *Siwulec*, at *2 (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)); *see also Twombly*, 550 U.S. at 555. "Accordingly, to satisfy the plausibility standard, the complaint must indicate that a defendant's liability ***is more than 'a sheer possibility*.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949) (emphasis added). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

"Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than 'legal conclusions' or 'naked assertions.'" *Siwulec*, at *2 (quoting *Twombly*, 550 U.S. at 555, 557). "Such allegations are 'not entitled to the assumption of truth' and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).  The Court must then "identify the 'nub of the ... complaint – the well-pleaded, nonconclusory factual allegation[s].'" *Id.*  Taking these allegations as true, the Court must then determine whether the complaint states a plausible claim for relief.  *Id.*

### A. All of Hantz's claims are barred to the extent they rely on events that occurred before December 27, 2017.

"A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC." *Riley v. Delaware River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006) (citing *Arasteh v. MBNA Am. Bank, N.A.,* 146 F. Supp. 2d 476, 490 (D. Del. 2001)).  "This filing requirement applies even if the discrete discriminatory act is related to acts alleged in timely filed charges." *Warsavage v. 1 & 1 Internet, Inc.*, at *3 (E.D. Pa. May 24, 2018) (citation and internal quotations omitted).

6

"Dismissal of a Title VII complaint is warranted when the claimant fails to file the charge within this 300–day statute of limitations period." *Riley*, 457 F. Supp. 2d 505 at 510 (citation omitted). The same 300-day statute of limitations applies to actions under the DDEA. 19 *Del. C.* § 712(c)(1); *see also, Bomberger v. Benchmark Builders, Inc.*, 2017 WL 1377595, at *2 (D. Del. Apr. 13, 2017).

In the instant case, Hantz filed the Charge on October 23, 2018. Therefore, all alleged incidents which occurred before December 27, 2017 are barred by the statute of limitations. As a result, Hantz is barred from raising any claims related to any conduct occurring before December 27, 2017.

### B. Counts I, III, IV and V should be dismissed because the Hantz failed to exhaust her administrative remedies

A plaintiff must exhaust his or her administrative remedies before bringing a claim pursuant to Title VII. *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 30 (3d Cir. 2014). "Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC." *Id.* at 31 (citation omitted). "The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Id.* (citing *Burgh v. Borough Council,* 251 F.3d 465, 470 (3d Cir.2001). "The ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Id.* (citing *Antol v. Perry*, 82 F.3d 1291, 1295–96 (3d Cir.1996)). To determine whether a plaintiff properly exhausted her administrative remedies for a claim, "the Court must determine whether the claims alleged in the instant suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Pritchard v. State of Delaware Dep't of Corr.*, 2020 WL 6261636, at *4 (D. Del. Oct. 23, 2020) (citation and internal quotations omitted). If a charge fails to allege a particular claim, the plaintiff is precluding from bring the claim to this Court. *See*,

7

*Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (dismissing a hostile work environment claim when that claim was not within the scope of the charge); *Twillie*, 575 F. App'x at 31 (dismissing, *inter alia*, religious and gender discrimination claims because plaintiff's EEOC complaint did not raise those claims); *Pritchard*, 2020 WL 6261636, at *3-4 (dismissing discrimination and retaliation claims as they were not contained in the EEOC charge); *Anderson v. McIntosh Inn*, 292 F.Supp.2d 412, 423 (D. Del. 2003) (dismissing a pay discrimination claim when the plaintiff's EEOC charge did not contain such a claim). Claims under the DDEA are also subject to the same exhaustion requirement. *Sullivan v. Hanover Foods Corp.*, 2020 WL 211216, at *3 (D. Del. Jan. 14, 2020).

In the instant case, Hantz's involuntary termination claims, Counts III and V, should be dismissed because Hantz failed to exhaust her administrative remedies with regards to those claims. Hantz failed to exhaust her administrative remedies because the Charge fails to allege any claims of improper termination. Indeed, the Charge fails to contain any facts regarding termination; nor could it, as Hantz filed the Charge on October 23, 2018, and Colonel McQueen did not notify Hantz of her termination until October 31, 2018. Because Hantz failed to exhaust her administrative remedies for any involuntary termination claims, Counts III and V of the FAC should be dismissed with prejudice.

Hantz's hostile work environment ("HWE") claim, Count I, should also be dismissed for failure to exhaust administrative remedies because the Charge failed to raise a HWE claim. To establish a HWE claim against an employer under Title VII, a plaintiff must prove that: "(1) the employee suffered intentional discrimination because of their race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race or sex in that

position; and (5) the existence of respondeat superior liability." *Weston v. Pa.*, 251 F.3d 420, 426 (3d Cir. 2001). To properly allege a HWE claim in an EEOC charge, the complainant must include language such as "hostile work environment" or "abusive atmosphere." *Barzanty*, 361 F. App'x at 414; *see also*, *Kemske v. Johnson Controls, Inc.*, 52 F.Supp.3d 688, 696 (D. Del. 2014) (finding that an EEOC charge failed to allege a HWE claim because there was no language that gave "rise to a hostile work environment claim.").

In *Navarro v. Wal-Mart Assocs., Inc.*, this Court found that plaintiff failed to exhaust his administrative remedies for a HWE claim because the EEOC charge did not contain any language that he was subjected to a "hostile work environment", "abusive atmosphere", or analogous language. 2020 WL 777202, at *5 (D. Del. Feb. 18, 2020) The Court also noted that whether plaintiff checked the "continuing action" box in the EEOC charge was not determinative. *Id.*

In this case, Hantz's HWE claim should be dismissed because she failed to allege the claim in the Charge, and therefore failed to exhaust her administrative remedies. The Charge does not contain any language regarding a "hostile work environment", "abusive atmosphere", or analogous language. While Hantz did check the "continuing action" box, as the Court found in *Navarro*, that fact alone is not determinative of whether Hantz properly brought a HWE claim. However, because the Charge failed to allege the requisite language, Hantz failed to exhaust her administrative remedies for the claim. As a result, Hantz's HWE claim should be dismissed.

Hantz's HWE claim should also be dismissed because the facts alleged in the Charge fail to support the claim. The second element of a HWE claim is regular and pervasive discrimination. The Charge fails to support that element. Looking at the allegations with the allowable timeframe, December 27, 2017 to October 23, 2018, the only alleged conduct to support the claim is the January 29, 2018 transfer from Troop 4 to Troop 5, and the February 7, 2018 disclosure of the

9

doctor's note to an authorized person. Those two incidents are not enough to be considered regular and pervasive discrimination.

Count IV should also be dismissed because it is not contained in the Charge. Count IV alleges that DSP retaliated against Hantz by transferring her to Troop 5 because Hantz "opposed practices made illegal by Title VII and the DDEA." Ex. A at 28-29. To demonstrate retaliation, an employee must establish "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and her employer's adverse action." *Hazen v. Mod. Food Servs., Inc.*, 113 F. App'x 442, 443 (3d Cir. 2004) (citation omitted). The Charge fails to allege that the transfer to Troop 5 was done in retaliation because the Charge fails to identify what protected activity Hantz engaged that resulted in her transfer to Troop 5. Therefore, Hantz failed to exhaust her administrative remedies for Count IV, and the claim should be dismissed.

Finally, DSP submits that, to the extent the aforementioned Counts are not entirely dismissed, Hantz should be precluded from relying on facts or conduct not alleged in the Charge to support her claims.

### C. Counts IV and V should also be dismissed because Hantz's FAC fails to allege facts to establish a prima facie retaliation claim

As discussed, *supra*, to establish a retaliation claim, Hantz must demonstrate "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and her employer's adverse action." *Id.* The same elements apply to retaliation claims under the DDEA. *Lehmann v. Aramark Healthcare Support Servs., LLC*, 630 F. Supp. 2d 388, 391 (D. Del. 2009) (citation omitted). "An adverse employment action other than discharge or refusal to hire must alter the employee's compensation, terms, conditions, or privileges of employment, deprives him

or her of employment opportunities or adversely affects his or her status as an employee." *Arasteh v. MBNA Am. Bank, N.A.*, 146 F. Supp. 2d 476, 496 (D. Del. 2001) (citation and internal quotations mitted). Here, the FAC fails to properly allege facts to support the elements for Counts IV and V.

### 1. Count IV

Hantz's FAC fails to establish the first element because it fails to specify what protected activity she engaged in that resulted in the alleged retaliation. Hantz generally alleges that she "opposed practices made illegal by Title VII and the DDEA." Ex. A at 21. DSP submits that those allegations are vague and fails to provide the requisite specificity to survive a motion to dismiss.

Hantz's FAC also cannot establish the second element because it fails to allege any adverse action. Hantz fails to allege how the transfer from Troop 4 to Troop 5 altered her compensation, privileges, status, or opportunities. Hantz alleges that Troop 5 was the Troop furthest from her house, and that Troop 5's jurisdiction is located where Hantz's brother was found deceased on July 4, 2016.[2] Ex. A at 21. There are no facts or allegations that Hantz's transfer from Troop 4 to Troop 5 decreased her compensation or privileges, or that she received less opportunities. Therefore, the transfer did not result in any adverse action.

Further, Hantz did not receive any adverse action because she was never actually transferred from Troop 4 to Troop 5. Hantz alleges that, on January 29, 2018, Captain Layfield notified her that she was going to be transferred form Troop 4 to Troop 5, effective March 4, 2018. Ex. A at 21. However, Hantz went out on medical leave on February 7, 2018. Ex A. at 21. Because Hantz was never actually transferred to Troop 5, there is no adverse action.

---

[2] Upon a Google Maps inquiry, the distance between Troop 4 and Troop 5 is 13.6 miles, which takes approximately 18 minutes to travel between the locations. Further, Hantz's residence at the time the Charge was filed was 22305 Raven Circle, Lincoln, DE 19960. To get to Troop 4 from the residence, Hantz would have to travel 15.3 miles, which would take about 23 minutes. To get to Troop 5, Hantz would have to travel 18.3 miles, taking approximately 27 minutes.

11

Hantz's FAC also fails to properly allege the third element because she it fails to allege a causal connection between protected activity and the alleged adverse action. Hantz's FAC fails to sufficiently allege the protected activity, and therefore cannot properly connect the protected activity to the alleged adverse action. Because the FAC fails to establish any of the elements for a retaliation claim, Count IV should be dismissed.

### 2. Count V

Hantz's FAC also fails to properly plead facts to establish the first element for Count V because, similarly, Hantz fails to allege what protected activity she engaged in that resulted in her termination. Further, because Hantz failed to properly allege the protected activity, she cannot establish the third element: a causal connection between the protected activity and adverse action. As result, Count V should be dismissed because the FAC does not properly allege facts to support the first and third elements.

### D. Count II should be dismissed because the FAC fails to allege facts to support the elements of a claim for gender discrimination

"To establish a prima facie case of non-pay related gender discrimination under Title VII, a [p]laintiff must establish that (1) she is a member of a protected class, (2) an adverse employment action was taken against her, and (3) the circumstances of the adverse action give rise to an inference of discrimination." *Anderson-Strange v. Nat'l R.R. Passenger Corp.*, 2019 WL 2438842, at *5 (D. Del. June 11, 2019). The same standard applies from claims under the DDEA. *Kenny v. Univ. of Delaware*, 2019 WL 5865595, at *3 (D. Del. Nov. 8, 2019), *aff'd*, 816 F. App'x 743 (3d Cir. 2020). The FAC fails to properly allege the second and third elements. As discussed above, Hantz fails to provide any facts that the transfer from Troop 4 to Troop 5 was an adverse action. Initially, the transfer never actually occurred because the transfer was effective March 4, 2018, but Hantz went out on medical leave on February 7, 2018 and never returned to work. Further, there

is no indication that, even if the transfer occurred, that it would have been an adverse action. Again, Hantz fails to allege any facts that the transfer would have altered her compensation, privileges, status, or opportunities. *See Arasteh*, 146 F. Supp. 2d at 496. Because Hantz did not suffer any adverse action from the transfer to Troop 4 to Troop 5, Count II should be dismissed.

## CONCLUSION

For the reasons stated above, DSP's Motion to Dismiss should be granted, and Hantz's FAC should be dismissed with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Kenneth L. Wan*
Kenneth L. Wan (DE Bar No. 5667)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
*Counsel for Defendant*
