IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICOLE    L.    HANTZ,    f/k/a    NICOLE
OLDHAM,

                          Plaintiff;

              v.                                          Civil Action No. 21-801-RGA

DIVISION     OF     STATE     POLICE,
DEPARTMENT OF SAFETY & HOMELAND
SECURITY, STATE OF DELAWARE,
                          Defendant.

MEMORANDUM OPINION

John M. LaRosa, LaROSA & ASSOCIATES LLC, Wilmington, DE;

    Attorney for Plaintiff.

Kenneth L. Wan, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE;

    Attorney for Defendant.

May 13, 2022

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendant's motion to dismiss. (D.I. 7). I have considered the parties' briefing. (D.I. 8, 9, 10). For the following reasons, Defendant's motion is DENIED.

## I.   BACKGROUND

Plaintiff Nicole Hantz worked for Defendant Delaware State Police ("DSP") from 2002 to 2018. (D.I. 5 ¶¶ 12, 184). In the First Amended Complaint ("FAC"), Hantz alleges incidents of bullying, disparate treatment, denial of benefits, and sexual advances and harassment. I focus here on some relevant allegations, all of which accept as true for purposes of this decision, leading up to Hantz's transfer and termination. "When Plaintiff was selected for the [Executive Protection Unit "EPU"], male troopers placed a photo and a message in her mailbox falsely claiming that Plaintiff performed oral sex on Delaware's Speaker of the House to gain the prestigious EPU job." (*Id.* ¶ 83). During her service in the EPU, Hantz attended a governors' convention in the Midwest with Corporal Rossi. "While driving to the convention in the Midwest, Rossi pretended to brake hard, pretended to merely hold Plaintiff back in the seat, reached his arm across the front seat of the car, and put his open hand on Plaintiff's breast numerous times." (*Id.* ¶ 93). At the convention, Rossi got a key to Hantz's hotel room from the front desk, let himself in, and "declared that he was going to stay in Plaintiff's room with her for the night." (*Id.* ¶ 101). Uncomfortable with the situation, Hantz locked herself in the bathroom and called for help. (*Id.* ¶¶ 103–105).

Hantz requested a transfer out of the EPU in 2016 and was transferred to Troop 4. (*Id.* ¶¶119–21). During her time on Troop 4, "on a nearly daily basis, Lieutenant John McColgan, a male, harassed and belittled Plaintiff in writing." (*Id.* ¶ 122). During a heated meeting, "McColgan put both of his hands on both of [Plaintiff's] breasts and forcefully pushed Plaintiff

2

out of his office." (*Id.* ¶134). In another meeting, "McColgan leaned back in his chair, grabbed his crotch, obscenely gestured toward Plaintiff, and told Plaintiff, 'Don't flatter yourself.'" (¶ 145). Hantz "told [Captain] Layfield that she . . . wanted McColgan brought up on the . . . charge of Conduct Unbecoming an Officer for pushing her in the breasts." (*Id.* ¶139). In response, "Layfield said that he was not going to stand for Plaintiff throwing around the 'female card'" and had Hantz sit in a conference room for her next two shifts. (*Id.* ¶¶ 140–41).

"Layfield told detectives that he was not going to stop until he got Plaintiff out of Troop 4." (*Id.* ¶ 152). "[O]n January 29, 2018, Layfield violated policy by calling Plaintiff on vacation and prematurely told Plaintiff that she was being transferred to Troop 5." (*Id.* ¶¶ 153, 155). "Troop 5 was the Troop farthest from Plaintiff's home" and "the same jurisdiction where Plaintiff's brother was found dead on the roadside." (*Id.* ¶¶ 156–57). On February 7, 2018, Hantz's "doctor ordered [her] on medical leave indefinitely for Stress and Depression." (*Id.* ¶ 162). When Hantz emailed her doctor's note to DSP and Layfield, Layfield shared the note with individuals unauthorized to receive it, stating that the doctor was a "diet doctor" and that Hantz was "nuts" and out for "10-81," the "police code for a possible mentally handicapped subject." (*Id.* ¶¶ 162-75).

DSP "forced Plaintiff out on medical leave on February 9, 2018." (*Id.* ¶176). On October 23, 2018, Hantz filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (D.I. 8–2). The next week, Colonel McQueen notified Hantz that DSP "was separating her from employment effective December 31, 2018." (*Id.* ¶181). The EEOC issued a Notice of Right to Sue on March 2, 2021. (*Id.* ¶ 5). Hantz filed this lawsuit on June 1, 2021. (D.I. 1). The operative complaint is the FAC. (D.I. 5). Hantz alleges a hostile work environment (Count I), involuntary transfer (Count II), involuntary termination (Count III),

and involuntary transfer and termination in retaliation (Counts IV and V). All counts allege

violations of Title VII and the Delaware Discrimination in Employment Act ("DDEA").

## II.   LEGAL STANDARD

### A. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the Court must accept the complaint's factual allegations as true. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555–56 (2007). The factual allegations do not have to be detailed, but

they must provide more than labels, conclusions, or a "formulaic recitation" of the claim

elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative

level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)."). There must be sufficient factual matter to state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the

complaint's factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.* at 665.

### B. Hostile Work Environment

To allege a prima facie hostile work environment claim under Title VII and the DDEA, a

plaintiff must "show (1) the employee suffered intentional discrimination because of their sex;

(2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected

the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same

sex in that position; and (5) the existence of *respondeat superior* liability." *Burgess v. Dollar*

*Tree Stores, Inc.*, 642 F. App'x 152, 154–55 (3d Cir. 2016) (citation and quotation marks

omitted); *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 82 (3d Cir. 2015) ("[T]he evidence

needed to prevail under the DDEA is generally the same as that needed to prevail under Title VII.").

### C. Involuntary Transfer and Termination

To state a prima facie case of non-pay related gender discrimination under Title VII and the DDEA, a plaintiff must allege that (1) she is a member of a protected class, (2) an adverse employment action was taken against her, and (3) the circumstances of the adverse action give rise to an inference of discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000).

### D. Retaliation

To state a claim for retaliation, a plaintiff must allege "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and her employer's adverse action." *Hazen v. Mod. Food Servs., Inc.*, 113 F. App'x 442, 443 (3d Cir. 2004). "Retaliation claims under the DDEA . . . should also be analyzed using the same framework." *Lehmann v. Aramark Healthcare Support Servs., LLC*, 630 F. Supp. 2d 388, 391 (D. Del. 2009).

## III.   DISCUSSION

Defendant raises a litany of arguments for why I should dismiss Plaintiff's complaint. Generally, I find that Plaintiff has plausibly stated a claim for each Count. I address Defendant's less conclusory arguments below.

### A. Count I Alleges a Continuing Violation

Hantz sues under laws that have a 300-day statute of limitations. I can "consider[] the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period . . . so long as an act contributing to that hostile environment takes place

within the statutory time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Hantz has alleged dozens of incidents spanning sixteen years of employment. Defendant asks me to knock out some of these incidents under the theory that they are "discrete acts" and "cannot be aggregated under a continuing violations theory." (D.I. 10 at 1 (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006))). Upon removal of the discrete acts, according to Defendant, there are "temporal interruptions that break the continuing violation chain." (D.I. 10 at 2–3). Even if Defendant is right that discrete acts cannot be aggregated under a continuing violation claim,[1] Hantz has alleged many incidents that are not discrete acts. Construing the complaint in the light most favorable to Hantz, these non-discrete acts form a pattern that extends into the statute of limitations period. The effect of any temporal interruptions on the pattern of hostility ought to be decided on a more complete record, not on a motion to dismiss.

### B. Exhaustion of Administrative Remedies

Title VII claimants must exhaust their administrative remedies by filing a charge with the EEOC prior to filing a lawsuit. *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014). Acts alleged in the lawsuit are properly exhausted when they "are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. United States Steel Corp*, 992 F.3d 198, 207 (3d Cir. 2021) (citation omitted). Regarding the second prong,

---

[1] I do not think there is consensus on this. *See Deering v. Hackensack Bd. of Educ.*, 2021 WL 508608, at *5 n.5 (D.N.J. Feb. 11, 2021) (harmonizing *O'Connor* with *Green v. Brennan*, 578 U.S. 547, 557 (2016), which described *Morgan* as "holding that a hostile-work-environment claim is a single 'unlawful employment practice' that includes every act composing that claim, whether those acts are independently actionable or not").

"the Court must only look at the scope of the EEOC investigation that would reasonably grow out of, or arise from, the initial charge filed with the EEOC, irrespective of the actual content of the Commission's investigation." *Id.* at 208–09 (cleaned up).

Most factual allegations in the FAC were included in the EEOC charge. The FAC's newly alleged incidents are "sufficiently related" to the claims in the EEOC charge because Hantz detailed many of the same incidents over the same timeline, discussed many of the same actors, and alleged that she reported sex-based harassment multiple times during her employment at DSP. (D.I. 8-2 at 3 of 3); *see Simko*, 992 F.3d at 210–11 ("In comparing the two sets of allegations, we look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue.").

The fact that the EEOC charge did not include Hantz's termination is not dispositive. "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Robinson v. Dalton*, 107 F.3d 1018, 1025–26 (3d Cir. 1997) (quotation omitted).

Hantz filed her EEOC charge on October 23, 2018. She was fired one week later. (FAC ¶ 181). She received a Notice of Right to sue on March 2, 2021. (FAC ¶ 5). "[A] reasonable EEOC investigation would have inquired into the fact of Plaintiff's termination." *Tourtellotte v. Eli Lilly & Co.*, 2013 WL 1628603, at *6 (E.D. Pa. Apr. 16, 2013), *aff'd*, 636 F. App'x 831 (3d Cir. 2016) (finding that the plaintiff had properly exhausted post-charge conduct, including plaintiff's termination several months after filing the EEOC charge); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (allowing plaintiff to amend her

complaint to include "a claim of retaliation which was never presented to or investigated by the EEOC").

Defendant asks me to preclude Hantz from relying on facts not alleged in the charge. (D.I. 8 at 10). Under Third Circuit law, Hantz may rely on incidents that would have been within the scope of the EEOC's investigation. Thus, I will not issue such a blanket preclusion at the beginning of the case.

### C. Transfer from Troop 4 to Troop 5 is Plausibly an Adverse Action

Defendant argues that I should dismiss Hantz's involuntary transfer in retaliation claim (Count IV) in part because Hantz fails to allege an "adverse action"—in particular, "Hantz fails to allege how the transfer from Troop 4 to Troop 5 altered her compensation, privileges, status, or opportunities." (D.I. 8 at 11). Defendant briefly makes the same argument for Hantz's involuntary transfer claim (Count II). (D.I. 12–13).

Count II alleges gender discrimination while Count IV alleges retaliation. Each offense has the element "adverse action," though only the discrimination claim requires that the adverse action affect a plaintiff's employment status. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–64 (2006) ("[T]he antiretaliation provision, unlike the [antidiscrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). Retaliation simply requires that a "reasonable employee would have found the challenged action materially adverse. . . . mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination[.]" *Id.* at 68 (internal citations omitted).

I think that Hantz has alleged a claim for both counts. The Third Circuit has "held that employment decisions such as transfers and demotions may suffice to establish the third element

8

of a plaintiff's prima facie case [of discrimination]." *Jones v. Sch. Dist. of Philadelphia*, 198

F.3d 403, 411–12 (3d Cir. 1999). In *Jones*, the Third Circuit held that a teacher had suffered an

adverse employment action when he was transferred schools and was required "to teach what he

regarded as less desirable science classes." *Id.* at 412. Here, Hantz has similarly alleged a

transfer that she regards as less desirable due to both the distance from her home and because

"Troop 5 is the same jurisdiction where Plaintiff's brother was found dead on the roadside[.]"

(FAC ¶ 157). Hantz also alleges that this transfer was against Defendant's "custom not to

transfer senior officers unless they requested it." (*Id.* ¶ 153).

Defendant cites *Remp v. Alcon Lab'ys, Inc.*, 701 F. App'x 103 (3d Cir. 2017) in support of

its position. (D.I. 10 at 6–7). In the context of a retaliation claim, the Third Circuit held,

"transferring a state trooper from one station to another and making his daily commute four and a

half miles longer would not have dissuaded a reasonable worker from making or from supporting

a charge of discrimination because the trooper failed to show that the transfer 'was more than a

trivial inconvenience.'" *Id.* at 108 (describing *Est. of Oliva ex rel. McHugh v. New Jersey*, 604

F.3d 788, 799 (3d Cir. 2010)). Despite this analogous case,[2] I do not find Defendant's argument

persuasive at the motion to dismiss stage. Both *Remp* and *Estate of Oliva* were decided on

summary judgment, not motions to dismiss. *See* 701 F. App'x at 104; 604 F.3d at 790.

Furthermore, in *Estate of Oliva*, "Oliva's transfers . . . were consistent with State Police practice

at the time to assign a newly appointed trooper to his or her first two duty stations for

approximately six months at each station and then to reassign the new trooper to a third station

---

[2] Exactly how analogous the case is cannot be determined on a motion to dismiss. While I can take judicial notice of the approximate distances between the two Troops, and I can see the address Plaintiff used when pursuing administrative remedies, I cannot take judicial notice (and Defendant does not say that I should, *see* D.I. 8 at 11 n. 2) that that address is the relevant address for calculation of how much added commute the transfer would add.

for an indefinite period determined by administrative needs and the trooper's preference." 604 F.3d at 792. Hantz has alleged the opposite—her transfer was inconsistent with DSP's practice of not reassigning senior officers. (FAC ¶ 153; *see also id.* ¶ 159 ("Defendant has not involuntarily transferred any other Sergeant from patrol without disciplinary action.")).

Thus, I find that Hantz has plausibly pled a prima facie case of involuntary transfer and involuntary transfer in retaliation.

## IV.   CONCLUSION

An appropriate order will issue.

10