## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICOLE L. HANTZ,                    )
f/k/a NICOLE OLDHAM,               )
                                    )
     Plaintiff,                    )
                                    )
     v.                            )          C.A. No. 21-801-RGA
                                    )
DIVISION OF STATE POLICE,           )
DEPARTMENT OF SAFETY &              )
HOMELAND SECURITY,                  )
STATE OF DELAWARE,                  )
                                    )
     Defendant.                    )

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Dated: November 1, 2023

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Victoria R. Sweeney, Esq. (#6586)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Victoria.Sweeney@delaware.gov
*Attorney for Defendant*

## TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ............................................................................1

SUMMARY OF THE ARGUMENT ...........................................................................................1

STATEMENT OF FACTS ............................................................................................................1

ARGUMENT .................................................................................................................................6

I.     PLAINTIFF'S CLAIM FOR HOSTILE WORK ENVIRONMENT FAILS AS A
MATTER OF LAW (COUNT I) .......................................................................................8

     A.     Plaintiff's Hostile Work Environment Claim is Time-Barred ................................8

     B.     Plaintiff Cannot Establish Hostile Work Environment ..........................................10

          i.     Plaintiff did not suffer intentional discrimination because of her sex .......11

          ii.     The discrimination was neither severe nor pervasive and would not
detrimentally affect a reasonable female in that position .........................12

          iii.     Plaintiff cannot prove respondeat superior liability...................................15

II.     NO DISCRIMINATION BASED ON PLAINTIFF'S 2018 TRANSFER OR
SEPARATION (COUNTS II AND III)...............................................................................17

III.     NO RETALIATION BASED ON PLAINTIFF'S 2018 TRANSFER OR
SEPARATION (COUNTS IV AND V) ..............................................................................19

IV.     PLAINTIFF'S STATE LAW CLAIMS FAIL ..................................................................20

CONCLUSION.............................................................................................................................21

## <u>TABLE OF CITATIONS</u>

*Abramson v. William Paterson College of N.J.*, 260 F.3d 265 (3d Cir. 2001) ..............................15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................7

*Anderson v. Mercer Cnty. Sheriff Dep't*, 815 F. App'x 664 (3d Cir. 2020) ..............................17

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990) ....................................................11

*Arasteh v. MBNA Am. Bank, N.A.,* 146 F. Supp. 2d 476 (D. Del. 2001) .......................................8

*Barber v. CSX Distrib. Serv.*, 68 F.3d 694 (3d Cir. 1995) .............................................................11

*Boandl v. Geithner*, 752 F. Supp. 2d 540 (E.D. Pa. 2010) ............................................................13

*Brandewie v. State of Delaware Dep't of Correction*, 2006 WL 3623817 (D. Del. Dec. 11, 2006) ........................................................................................................................................8

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ................................................................17

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) ..................................................10

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001) .......................................................................14

*Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529 (D. Del. 2012) .................................19

*Carter v. Wesley*, 2020 WL 838310 (D. Del. Feb. 20, 2020) .........................................................7

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ...............................................................12

*Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18 (3d Cir. 2006) ...................................................11

*Conklin v. Warrington Twp.*, 2009 WL 1227950 (M.D. Pa. Apr. 30, 2009) ................................20

*Crawford v. George & Lynch, Inc.*, 2013 WL 6504635 (D. Del. Dec. 9, 2013) ..........................10

*Davis v. City of Newark*, 285 F. App'x 899 (3d Cir. 2008) .....................................................9, 13

*Davis v. Nat'l R.R. Passenger Corp.*, 733 F.Supp.2d 474 (D. Del. 2010) ..............................13, 14

*Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545 (3d Cir. 2017) .........................................................8

*Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990) ...............................................11

*Eldridge v. Municipality of Norristown*, 2013 WL 811956 (3d Cir. Mar. 6, 2013) ....................19

iii

*Enders/Maden v. Super Fresh*, 594 F. Supp. 2d 507 (D. Del. 2009), *aff'd sub nom. Enders v. Super Fresh*, 346 F. App'x 829 (3d Cir. 2009) .................................................................16

*Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476 (D. Del. 2010) .............................20

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .......................................................14, 15, 16

*Fields v. Am. Airlines, Inc.*, 2023 WL 6391689 (E.D. Pa. Sept. 29, 2023) ...................................15

*Flax v. Delaware*, 329 F. App'x 360 (3d Cir. 2009) .....................................................................19

*Flores v. Danberg*, 84 F. Supp. 3d 340 (D. Del. 2015) .................................................................19

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994) .............................................................................18

*Garnett v. Bank of Am.*, 243 F. Supp. 3d 499 (D. Del. 2017) ......................................................19

*Gresham v. State of Del. Dep't of Health and Social Servs.*, 2020 WL 228280 (D. Del. Jan. 15, 2020), *aff'd sub nom. Gresham v. Delaware Dep't of Health & Soc. Servs.*, 821 F. App'x 146 (3d Cir. 2020) .............................................................................................. 11-12

*Hamera v. Cnty. of Berks*, 2006 WL 1985791 (E.D. Pa. July 11, 2006), aff'd, 248 F. App'x 422 (3d Cir. 2007) .....................................................................................................9, 13

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ....................................................................13, 15

*Heath v. City of Philadelphia*, 2021 WL 2661520 (E.D. Pa. June 29, 2021), *aff'd*, 2022 WL 4298123 (3d Cir. Sept. 19, 2022) ..............................................................................16

*Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100 (3d Cir. 2009) ....................15, 16

*Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79 (3d Cir. 2015) .....................................................20

*In re Asbestos Litig.*, 2019 WL 325130 (D. Del. Jan. 25, 2019), *report and recommendation adopted sub nom. Dove v. Boeing Co.*, 2019 WL 529890 (D. Del. Feb. 11, 2019) ..........18

*Koschoff v. Henderson,* 109 F. Supp. 2d. 332 (E.D. Pa 2000) *aff'd*, 35 F. App'x 357 (3d Cir. 2002) .................................................................................................................12

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999).......................................................15

*Lorah v. Tetra Tech, Inc.*, 541 F. Supp. 2d 629 (D. Del. 2008).....................................................20

*Mandel v. M & Q Packaging Corp.,* 706 F.3d 157 (3d Cir.2013)....................................................9

*Martinez v. Dep't of Homeland Sec./Div. of the State Police*, 2019 WL 1220305 (D. Del. Mar. 15, 2019)................................................................................................................20

*Martinez v. Rapidigm, Inc.*, 290 F. App'x 521 (3d Cir. 2008) .......................................18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...........................................17

*McKinnon v. Gonzalez*, 642 F. Supp. 2d 410 (D.N.J. 2009).........................................12

*Mudie v. Philadelphia Coll. of Osteopathic Med.*, 2022 WL 1607544 (E.D. Pa. May 20, 2022), *aff'd*, 2023 WL 6210754 (3d Cir. Sept. 25, 2023).............................................8, 10

*Nitkin v. Main Line Health*, 67 F.4th 565 (3d Cir. 2023) ............................................14

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)...............................12

*Paris v. Christiana Care Visiting Nurse Ass'n.*, 197 F. Supp. 2d 111 (D. Del. 2002) .................11

*Reynolds v. USX Corp.*, 56 F. App'x 80 (3d Cir. 2003) ...............................................13

*Riley v. Delaware River & Bay Auth.*, 457 F. Supp. 2d 505 (D. Del. 2006) .................8

*Robinson v. Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997)................................................14

*Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir.2003) .............................17

*Selvato v. SEPTA*, 143 F. Supp. 3d 257 (E.D. Pa. 2015), *aff'd*, 658 F. App'x 52 (3d Cir. 2016) ............................................................................................................9

*Stephenson v. City of Philadelphia*, 2006 WL 1804570 (E.D. Pa. Jun. 28, 2006), *aff'd*, 293 F. App'x 123 (3d Cir. 2008) ............................................................................13

*Storey v. Burns International Security Services,* 390 F.3d 760 (3d Cir. 2004) ......................14, 17

*Subh v. Wal-Mart Stores East, LP*, 2009 WL 866798 (D. Del. Mar. 31, 2009)............................8

*Taggart v. Verizon Del. LLC*, 2013 WL 456406 (D. Del. Feb. 1, 2013).......................13

*Taylor-Bray v. Delaware Dep't of Servs. for Child., Youth & Their Fams.*, 627 F. App'x 79 (3d Cir. 2015).............................................................................................17

*Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232 (3d Cir. 2014)...................9

*Tyler v. Diamond State Port Corp.*, 2019 WL 3387791 (D. Del. July 26, 2019), *aff'd,* 816
F. App'x 729 (3d Cir. 2020) ............................................................................11

*Weston v. Pa.,* 251 F.3d 420 (3d Cir. 2001)............................................................10

*Yates v. Delaware Psychiatric Ctr./Delaware Dep't of Health & Soc. Servs.*, 2018 WL
4328815 (D. Del. Sept. 11, 2018) ...................................................................11

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1367(c) ............................................................................................20

42 U.S.C. §§ 2000e *et seq.*.................................................................... *passim*

19 *Del. C.* § 714 ................................................................................................20

Fed. R. Civ. P. 56(a) ...........................................................................................6

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff initiated this matter on June 1, 2021 and filed an Amended Complaint (the "Complaint") on July 14, 2021.  Plaintiff asserts claims of discrimination, hostile work environment and retaliation based on gender under Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] and the Delaware Discrimination in Employment Act ("DDEA") against the Division of State Police ("DSP" or the "Division").  DSP moved to dismiss the Complaint on August 30, 2021, which Plaintiff opposed on September 13, 2021, and the Court denied on May 13, 2022.  DSP filed an Answer on June 24, 2022.  The parties completed fact discovery on September 27, 2023.  This is DSP's Opening Brief in Support of its Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

1.     Plaintiff's Title VII claim for hostile work environment fails as a matter of law. Plaintiff's claim is also time-barred as Plaintiff cannot aggregate her allegations under a continuous violation theory.  Furthermore, DSP is entitled to the *Faragher/Ellerth* defense and laches defense.

2.     Plaintiff's claims for discrimination fail as a matter of law.

3.     Plaintiff's claims for retaliation fail as a matter of law.

4.     Plaintiff's state law claims for violations of the DDEA are barred because Plaintiff sought relief in federal court under Title VII and fails for the same reasons as under Title VII.

## STATEMENT OF FACTS[2]

### A.  Plaintiff's Employment with the Division

Plaintiff began her employment with DSP on July 26, 2002, when she was hired as a Recruit.  A0014.  On April 20, 2003, after Plaintiff successfully completed her training, she was

---

[1] 42 U.S.C. §§ 2000e *et seq.*
[2] For purposes of this Motion, all facts herein are presented in the light most favorable to the Plaintiff.

1

promoted to Trooper and was assigned to Troop 7 in Lewes, DE.  *Id*.  Next, Plaintiff was promoted to Trooper First Class, and then to Corporal.  *Id*.  On May 25, 2007, Plaintiff applied and was accepted into the Collision Reconstruction Unit ("CRU") at Troop 7, where she was tasked with investigating collisions. *Id*. On July 26, 2010, Plaintiff was promoted to Corporal Grade I, and then to Sergeant on June 27, 2011, at which time she left CRU and worked on patrol at Troop 7.  *Id*.

On January 13, 2023, Plaintiff applied for and was accepted into the Governor's Executive Protection Unit ("EPU").  A0014.  Plaintiff requested to transfer in October 2015, and was subsequently assigned to Troop 4, in Georgetown, Delaware, on October 18, 2015.  A0014.  On January 29, 2018, Colonel Nathaniel McQueen, Jr. ("Colonel McQueen")[3] announced transfers for ten uniformed supervisors, including Plaintiff, effective March 4, 2018.  A0209.  Plaintiff was assigned to Troop 5 (the "2018 Transfer") until she was separated from her employment with DSP, effective December 31, 2018.  A0014.

Plaintiff's performance was reviewed annually, and each year, she always received "Consistently Meets Expectations," "Consistently Exceeds Expectations" and "Consistently and Substantially Exceeds Expectations" on all her performance reviews.[4]  A0063, A0073, A0082, A0015–24; A0028–84; A0095–119; A0121–26; A0128–51; A0195–208.  She likewise received many accolades throughout her career, including the 2006 Mothers Against Drunk Driving Award, the 2006 Lifesaving Award, a Commendation Letter from the Superintendent in 2009, and various letters of thanks from Delaware civilians.  *See* D.I. 5 ¶ 21.

**B.  Plaintiff's Difficulties in the Workplace**

Plaintiff complains that she was subjected to a "continuing pattern of harassment" due to

---

[3] Colonel McQueen currently serves as the Secretary of the Delaware Department of Safety & Homeland Security, State of Delaware.
[4] Plaintiff received only one written reprimand during her tenure with the Division. A0172–76.

her sex throughout her tenure with the Division.  D.I. 5 ¶ 32.  Plaintiff maintains that, from 2002–

2016, the following incidents occurred:

- *Smyk Allegations* – In January 2004, while she was assigned to Troop 7, Master Corporal Steve Smyk ("MCpl. Smyk") email troopers Plaintiff did not know or work with warning them of the "FEMALE" with poor officer safety. A0362; A0025–26. On an unknown date, MCpl. Smyk told Plaintiff she "looked good" in her Class-A uniform and that "boots and britches" were made for a woman. A0664 at 134–35.  MCpl. Smyk talked about troopers' sexual relationships, both male and female. A0664 at 136–37.

- *Dean Allegations* – In 2002–2008, while assigned to Troop 7, Sergeant Barry Dean ("Sgt. Dean") referred to Plaintiff's husband as "gay" and a "faggot."  A0674 at 177. From 2007–2011, while assigned to CRU, Sgt. Dean instructed Plaintiff to handle certain prosecution cases because as her supervisor, he outranked her. A0677 at 187:21–192:6

- *Rossi Allegations* – In August 2013, when accompanying the governor to a conference as part of the EPU, Master Corporal Jim Rossi ("MCpl Rossi") touched her leg while driving, let himself into her hotel room without her knowledge, and stole a pair of her underwear A0682–87.

- *Miscellaneous Allegations* – From 2003–2013, unidentified individuals vandalized her patrol vehicle, mailbox, and campaign hat, and placed a picture with a sexual innuendo in her mailbox.  A0364.  DSP prohibited Plaintiff from teaching Krav Maga. A0726 at 383.[5] DSP employees spread rumors about her sexual proclivities. A0694–A0695; A0728.[6] Plaintiff, like other sergeants, including males, did not have enough staffing on her patrol shift while at Troop 4 in 2015–2016. A0127; A0471; A0913; A0946.

Plaintiff further maintains that from August–October 2017, Lieutenant John McColgan

("Lt. McColgan") sent her "ignorant emails" regarding issues with reports and warrant attempts.

*See* A0164–71.  Other sergeants, including males, also complained of Lt. McColgan's emails, and

the issue was discussed at a sergeants' meeting on October 26, 2017.  A0701–09.  The next day,

Plaintiff spoke with Lt. McColgan about warrant attempts and at some point, accused Lt.

McColgan of treating her differently because of his brother.  A0702; A1022–23.  Lt. McColgan,

---

[5] Krav Maga, however, is not an approved Division training. A0859 at 322–33.

[6] None of the rumors, however, kept Plaintiff from performing her duties at work, and at times, she thought the rumors were "quite absurd" to the point where others knew they weren't true. A0728.

not knowing what Plaintiff was talking about, asked Plaintiff to leave his office. A1026. When she did not comply, he pushed her out of the way,[7] making contact with her breast. A0732.

Captain Layfield was notified and spoke with Plaintiff separately and again with Lt. McColgan and Lieutenant Mentino DiSilvestro ("Lt. DiSilvestro"), who was Plaintiff's supervisor and was in the office next to Lt. McColgan's during the conversation at issue. A0385–86; A0706–09. Plaintiff claims that when Lt. McColgan sat down, he grabbed his crotch, spread his legs, and then leaned back in his chair, put his arms behind his head, and told Plaintiff that if she felt "he was coming to work to try to attack [her], don't flatter [yourself]." A0708–09. After this, at Captain Layfield's direction, Lt. McColgan no longer reviewed Plaintiff's criminal reports. A0555. Nevertheless, Plaintiff maintains that Captain Layfield did not properly respond to her complaints.

The Division's Harassment & Anti-Harassment Policy (the "Harassment Policy") requires employees to directly report any complaints of harassment to the Internal Affairs/Office of Professional Responsibility ("IA/OPR") or to Rhonda Davis, the Division's Equal Employment Opportunity/Affirmative Action representative within Human Resources ("HR"), if the employee is unable to resolve the problem with the alleged harasser. A0010; A0085; A1094–95. Plaintiff acknowledged that she understood and agreed to abide by the procedures outlined in the Harassment Policy every year during her annual evaluation. *See e.g.*, A0102, A0110, A0115, A0199, A0126, A0132, A0139, A0197. Throughout her entire tenure with DSP, Plaintiff never reported any complaints of sexual harassment, discrimination, or hostile work environment to anyone in IA/OPR, or to Ms. Davis. A0666–67 at 145:23–146:1; A0670; A0672; A0694.

---

[7] For purposes of this Motion only, Defendants are not contesting the material facts alleged to have occurred with respect to Lt. McColgan.

### C.  Plaintiff Receives Notice of Transfer and Takes Medical Leave

On October 27, 2017, Captain Layfield contacted Major Sean Moriarty ("Major Moriarty") to notify him of what transpired with Plaintiff on October 26 and 27th to seek guidance on whether DSP should address Plaintiff's mental health, given how she reacted.  A0491–98. Major Moriarty asked for guidance from HR. A1111–13. HR informed Major Moriarty that while Plaintiff's behavior was concerning, it did not rise to the level of requiring a Fitness for Duty Evaluation ("FFDE") or mandated mental health treatment. A1113; A0187–88.  Monica Holmes, an HR Manager, contacted Plaintiff to encourage her to utilize DSP resources available and seek help with her mental health. A0190–91; A1102.

The Executive Staff discussed the need to resolve the intrapersonal issues Plaintiff was having with Lt. McColgan and Captain Layfield. A1113–14.  The Executive Staff determined it was not operationally possible to transfer either Captain Layfield or Lt. McColgan given their rank and the lack of vacancies.  *Id.*   There was, however, an upcoming Sergeant position available in Troop 5, located in Bridgeville, Delaware.  The Executive Staff believed that transferring Plaintiff to Troop 5 would be in the best interest of the Division, would create space between Plaintiff and the Troop 4 Administration and afford Plaintiff with an opportunity to start fresh.[8]  A1114.

On February 8, 2018, Plaintiff informed Captain Layfield that she could not accept the transfer because her brother died from an overdose within the jurisdiction of Troop 5 nearly two years prior.  A0210.  The Division, however, is unable to reconfigure a transfer assignment on the grounds that an employee's family member died in the jurisdiction of that assignment. A1115.

---

[8] Under the Division's Transfer Policy, all sworn employees are subject to reassignment at any time, including mending intradepartmental relationships that cause an individual to not function in good rapport with other employees.  A0001–02.

On February 9, 2018, Plaintiff provided Captain Layfield and HR with a doctor's note from her primary care provider excusing her from work until further notice. A0212.  Captain Layfield attempted to share the doctor's note with Lieutenant Colonel Monroe Hudson but instead, inadvertently shared the note with Plaintiff, and mistakenly stated the note was from a dietician (the "February Text Message"). A0528–29.  Plaintiff remained out on medical leave for severe anxiety and depression. A0212–18. During this time, DSP paid Plaintiff's out-of-pocket expenses for her treatment.  A1105 ¶ 21.

### D.  Plaintiff Notifies the Division of her Hostile Work Environment Claims

On July 5, 2018, Plaintiff's attorney sent Robert Coupe, then-Secretary of the Delaware Department of Safety and Homeland Security, a letter alleging that she Plaintiff subjected to a hostile work environment, and that the Division retaliated against her based on her sex (the "July 2018 Letter").  A0227–44.  At no point prior to this letter did Plaintiff ever complain that Lt. McColgan pushed her, or that Captain Layfield mistreated her due to her sex while she was at Troop 4.  As soon as DSP received this letter, an IA investigation was ordered.  A1115.  A Captain Layfield and Lt. McColgan were unfounded. A1108-09.

On October 23, 2018, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").[9]  *See* D.I. 8-2.

### E.  Plaintiff is Separated from the Division after Medical Prognosis

In October 2018, Plaintiff's medical providers indicated—for the first time—that based on her assessment, Plaintiff was not capable of performing in a full duty capacity and that the probability for Plaintiff to return to full duty did not exist. A1105; A0297; A0301.  Under DSP's Policy on Disability Leave/Modified Duty Assignment During Rehabilitation from Injury or

---

[9] The Division received notice of the Charge on November 1, 2018.  D.I. 8-2 at 2.

Illness ("Disability Leave Policy"), if medical documentation establishes that an employee has an illness or injury that "permanently prevents the employee from performing some or all of [the] essential functions of full-duty status, the employee shall be separated from [DSP]."  A0154.

On or around October 31, 2018, Colonel McQueen sent Plaintiff a letter notifying her that she was being separating from her employment per Division Policy, using language provided in DSP's Disability Leave Policy § 2.E (the "Separation Letter").  A0305–06.  At the time of her separation, Plaintiff had 23.75 hours of paid vacation leave remaining, which she was paid out on January 10, 2019. A0313; A1097. Although Plaintiff had ten hours of sick leave remaining, she was not paid for her sick leave balances because employees retiring with a disability pension are not entitled to sick day compensation or early retirement credit.

## ARGUMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] factual dispute is genuine only where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Carter v. Wesley*, 2020 WL 838310, at *2 (D. Del. Feb. 20, 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  The mere existence of a factual dispute is insufficient to preclude summary judgment: there must be a dispute over a material fact that would affect the outcome of a suit under the governing law.  *Liberty Lobby*, 477 U.S. at 248.  Furthermore, the "nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Carter*, 2020 WL 838310, at *2 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "The non-moving party's failure to offer colorable or significantly probative evidence for an essential

7

element on which it has the burden of proof entitles the moving party to summary judgment." *Subh v. Wal-Mart Stores East, LP*, 2009 WL 866798, at *10 (D. Del. Mar. 31, 2009).

## I.     PLAINTIFF'S CLAIM FOR HOSTILE WORK ENVIRONMENT FAILS AS A MATTER OF LAW (COUNT I)

### A.   <u>Plaintiff's Hostile Work Environment Claim is Time-Barred</u>

Plaintiff's Title VII claim for hostile work environment is time-barred because she failed to file a claim with the EEOC or the Delaware Department of Labor within 300 days from the time of any alleged discriminatory act.  "A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC." *Riley v. Delaware River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006) (citing *Arasteh v. MBNA Am. Bank, N.A.,* 146 F. Supp. 2d 476, 490 (D. Del. 2001)).  This filing requirement is subject to equitable tolling, and one such equitable exception is the continuing violation theory. *Brandewie v. State of Delaware Dep't of Correction*, 2006 WL 3623817, at *8 (D. Del. Dec. 11, 2006) (citations omitted).  Under this theory, "when at least one component act of a hostile work environment occurred within the limitations period, courts may consider earlier component acts that are 'part of the same unlawful employment practice.'" *Mudie v. Philadelphia Coll. of Osteopathic Med.*, 2023 WL 6210754, at *3 (3d Cir. Sept. 25, 2023) (quoting *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017).  To be part of the same unlawful employment practice, "component acts must involve 'similar conduct by the same individuals, suggesting a persistent, ongoing pattern.'" *Id.* (citing *Mercy Cath. Med. Ctr.*, 850 F.3d at 566).

Plaintiff cannot establish a continuing violation since none of the alleged discriminatory conduct occurred within the filing period.  Given that Plaintiff filed her EEOC charge of discrimination on October 23, 2018, only acts occurring within the previous 300 days—that is on or after December 27, 2017—may be considered by the Court.  For purposes of Plaintiff's hostile

work environment claim,[10] the only act that occurred during the filing period was Capt. Layfield's February Text Message, as Plaintiff went out on medical leave on February 9, 2018, and never returned back to work.   The February Text Message, although offensive, is not facially discriminatory based on Plaintiff's sex, and the record does not support a reasonable inference that the February Text Message was motivated by discrimination on the basis of sex.   *Davis v. City of Newark*, 285 F. App'x 899, 902 (3d Cir. 2008) ("comments that cannot be reasonably construed as invoking any [sexual] feeling do not support Title VII liability").

But even if the Court finds the February Text Message does constitute sexually discriminatory conduct, Plaintiff's hostile work environment claim is still time-barred because the alleged wrongful conduct of which she complains does not demonstrate a persistent, ongoing pattern.   Any acts that Plaintiff alleges constituted a hostile work environment on or after December 27, 2017 and any acts Plaintiff alleges constituted a hostile work environment before December 27, 2017 must involve "similar conduct by the same individuals," such that they would "suggest[] a persistent, ongoing pattern."   *Mandel,* 706 F.3d at 165. The Third Circuit has cautioned that "[t]he reach of this doctrine is understandably narrow." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)); *see Hamera v. Cnty. of Berks*, 2006 WL 1985791, at *4 (E.D. Pa. July 11, 2006), *aff'd,* 248 F. App'x 422 (3d Cir. 2007) (no genuine issue of material fact under continuing violations theory when earlier conduct was not actionable due to a four-year gap between allegedly discriminatory conduct); *see also Selvato v. SEPTA*, 143 F. Supp. 3d 257, 265 (E.D. Pa. 2015), *aff'd*, 658 F. App'x 52 (3d Cir. 2016) (no genuine issue of

---

[10] Plaintiff's transfer and separation from employment constitute discrete acts that are actionable separate from her hostile work environment claim. *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165 (3d Cir.2013).

material fact under continuing violations theory when earlier conduct was not actionable due to a three-year gap between allegedly discriminatory conduct).

This presents an insurmountable hurdle for Plaintiff, given the substance of her allegations. Unlike cases where the continuing violations doctrine implicates the same individual throughout the relevant time period, here, Plaintiff's timely allegation has nothing to do with MCpl. Smyk, Sgt. Dean, MCpl. Rossi, Lt. McColgan, Sgt. Mitchell, or any of the other individuals who are the subject of Plaintiff's untimely allegations. Instead, the February Text Message constitutes a sporadic and isolated incident insufficient to support a continuing violation theory that spans Plaintiff's sixteen-year tenure with DSP. *Mudie v. Philadelphia Coll. of Osteopathic Med.*, 2022 WL 1607544, at *14 (E.D. Pa. May 20, 2022), *aff'd*, 2023 WL 6210754 (3d Cir. Sept. 25, 2023) (declining to extend the continuing violations theory on a hostile work environment claim involving different conduct by different people in an "everything-but-the-kitchen-sink" manner). As Plaintiff cannot establish a persistent, ongoing pattern of similar conduct by the same individuals, the continuing violation theory cannot save her untimely claims.

### B. <u>Plaintiff Cannot Establish Hostile Work Environment</u>

Even if Plaintiff's hostile work environment claim was timely, her claim nonetheless fails. To establish a *prima facie* case for hostile work environment based on gender discrimination, a plaintiff must establish that: (1) she suffered intentional discrimination because of her sex; (2) which was severe or pervasive; (3) detrimentally affected her; (4) would detrimentally affect a reasonable person of the same sex in that position; and (5) *respondeat superior* liability." *Crawford v. George & Lynch, Inc.*, 2013 WL 6504635, at *6 (D. Del. Dec. 9, 2013) (citing *Weston v. Pa.,* 251 F.3d 420, 425–26 (3d Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)).

10

### i.   Plaintiff did not suffer intentional discrimination because of her sex.

General complaints of unfair treatment in the workplace "[do] not translate into a charge of illegal . . . discrimination." *Tyler v. Diamond State Port Corp.*, 2019 WL 3387791, at *6 (D. Del. July 26, 2019), *aff'd.* 816 F. App'x 729 (3d Cir. 2020) (citing *Barber v. CSX Distrib. Serv.*, 68 F.3d 694, 702 (3d Cir. 1995)).   Moreover, "[n]ot all workplace conduct that may be described as harassment rises to the level of a hostile work environment." *Gresham v. State of Del. Dep't of Health and Social Servs.*, 2020 WL 228280, at *6 (D. Del. Jan. 15, 2020), *aff'd sub nom. Gresham v. Delaware Dep't of Health & Soc. Servs.*, 821 F. App'x 146 (3d Cir. 2020) (citing *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 25 (3d Cir. 2006)).   Instead, a plaintiff must demonstrate that she was subjected to "continuous and repeated acts of harassment." *Gresham*, 2020 WL 228280, at *6 (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990)).

Plaintiff fails to provide any evidence that she was subjected to intentional discriminatory conduct because of her gender.   To prove the first element in the *prima facie* case, Plaintiff must establish that her gender was a "substantial factor in the discrimination" and that "she would not have been treated in the same way if she were a man." *Paris v. Christiana Care Visiting Nurse Ass'n.*, 197 F. Supp. 2d 111, 117 (D. Del. 2002) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir.1990)).   Furthermore, "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's [gender]." *Yates v. Delaware Psychiatric Ctr./Delaware Dep't of Health & Soc. Servs.*, 2018 WL 4328815, at *3 (D. Del. Sept. 11, 2018).   Notably absent from the record though, is sufficient evidence demonstrating that the alleged conduct was motivated by Plaintiff's gender.

Indeed, by Plaintiff's own account, both MCpl. Smyk and Sgt. Dean spoke their minds and made inappropriate sexual comments to males and females alike.   A0660 at 119:9-10; AA0664 at

136:8–137:16; A0675 at 178:4–181:15. Plaintiff also testified that while she was assigned to CRU, Sgt. Dean instructed her to handle certain prosecution cases because as her supervisor, he outranked her. A0677 at 187:21–192:6.  Likewise, the record is devoid of any facts demonstrating that Lt. McColgan treated Plaintiff any differently than her male peers.  Plaintiff herself testified that Lt. McColgan's tone in his email communication remained consistent, regardless of gender. A0700.  But "it is well-settled that difficult or stressful working conditions are not tantamount to a hostile work environment caused by acts of discrimination." *McKinnon v. Gonzalez*, 642 F. Supp. 2d 410, 422 (D.N.J. 2009) (citations omitted); *see also Koschoff v. Henderson,* 109 F. Supp. 2d. 332, 345-46 (E.D. Pa 2000) *aff'd*, 35 F. App'x 357 (3d Cir. 2002) (holding that allegedly harassing conduct that is motivated by a bad working relationship, by a belief that the plaintiff has acted improperly, or by personal animosity is not protected by Title VII).  Accordingly, even if Lt. McColgan raised his voice, or spoke sternly with Plaintiff, as she alleges, such behavior, though perhaps "inappropriate . . . is not indicative of . . . gender discrimination" and therefore, Plaintiff's claims fail.  *Gresham*, 2020 WL 228280, at \*6 (citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998) (Title VII is not a "general civility code.").

> ### ii. The discrimination was neither severe nor pervasive and would not detrimentally affect a reasonable female in that position.

Nor can Plaintiff establish that any of the allegedly improper conduct was sufficiently severe or pervasive.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (holding that a hostile work environment is actionable only if the discrimination is so severe and pervasive that it "alters the conditions of the victim's employment" and creates an "abusive working environment").  Establishing whether an environment is sufficiently hostile or abusive to successfully support a Title VII claim is determined by the totality of the circumstances, including the "frequency of the conduct; its severity, and whether it is physically threatening or humiliating,

or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[11] *Breeden*, 532 U.S. at 271. The environment must be objectively hostile, not merely hostile in the plaintiff's view. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Even conduct that is unquestionably offensive and rude will not rise to the level required to make out a hostile work environment claim unless it is sufficiently severe." *Boandl v. Geithner*, 752 F. Supp. 2d 540, 571 (E.D. Pa. 2010); *see also Taggart v. Verizon Del. LLC*, 2013 WL 456406, at *6 (D. Del. Feb. 1, 2013) ("Casual, isolated, or sporadic comments or incidents are insufficient.").

Plaintiff's gender discrimination claims amount to a few isolated incidents with different individuals for short periods of time throughout her career: MCpl. Smyk in January 2004; Sgt. Dean in 2007–2008; MCpl Rossi in 2013; Lt. McColgan in 2017, and Captain Layfield in 2017 and one incident in 2018. None of these allegations are actionable. *Hamera v. Cnty. of Berks*, 2006 WL 1985791, at *6 (E.D. Pa. July 11, 2006), *aff'd*, 248 F. App'x 422 (3d Cir. 2007) (finding that "comments made by various officers, infrequently, over a fourteen-year span, with both an eight-year gap and a four-year gap in between" were not regular and pervasive); *see also Stephenson v. City of Philadelphia*, 2006 WL 1804570, at *11, n.2 (E.D. Pa. Jun. 28, 2006), *aff'd*, 293 F. App'x 123 (3d Cir. 2008) (nine specific incidents over a period of nineteen months was not severe or pervasive notwithstanding that they occurred "all the time").

Moreover, Plaintiff's belief that her shift was short-staffed during her time at Troop 4 in 2015–2017 and that Lt. McColgan was sending her "ignorant emails" constitutes sexual discrimination is unfounded. *See City of Newark*, 285 F. App'x at 903 ("[Plaintiff] cannot sustain

---

[11] Courts employ this standard when analyzing the proof for both the second and fourth elements of a *prima facie* hostile work environment claim under Title VII. *See Davis v. Nat'l R.R. Passenger Corp.*, 733 F.Supp.2d 474, 488 (D. Del. 2010) (applying standard when analyzing whether conduct was severe or pervasive.); *see also Reynolds v. USX Corp.*, 56 F. App'x 80, 82 (3d Cir. 2003) (applying same to element requiring detrimental effect of a similarly situated reasonable person).

a claim simply by asserting an event and then asserting it was motivated by [sexual] bias."). Plaintiff's subjective perceptions fall far short of producing competent evidence that her work environment was objectively permeated with hostility because Plaintiff is a female. *See Robinson v. Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (it is well-settled "that 'not everything that makes an employee unhappy' qualifies as [a materially adverse employment action], for otherwise, minor and even trivial employment action that 'an irritable, chip-on-the-shoulder employee did not like would form the basis for a discrimination suit'") (quotations omitted).  Nor can Plaintiff's unsupported claims that the discriminatory conduct occurred daily survive.  *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (finding no concrete evidence to support "general, unsubstantiated allegations that the alleged conduct occurred 'regularly' or 'all the time'" when the plaintiff could not describe such instances during her deposition).

Similarly, misconduct—particularly with respect to the alleged conduct of MCpl. Rossi during the Governor's Conference and Lt. McColgan during the October 26th Office Conversation—is not "severe" under this analysis.  *See Davis*, 733 F.Supp.2d at 488 (subjecting an employee to a bag of fecal matter, leaving white powder on their desk, using their computer to access an online dating site, and stealing their tools were extreme and held as "severe or pervasive conduct").  None of the conduct complained of rises to the level of an employment practice that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns International Security Services,* 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (the standards for judging hostility are designed to assure that "the ordinary tribulations of the workplace" are not substituted for the "extreme" conduct needed "to amount to a change in the terms and conditions in employment").  Plaintiff's continued success in

14

receiving "Consistently Meets Expectations," "Consistently Exceeds Expectations" and "Consistently and Substantially Exceeds Expectations" on all performance reviews demonstrates that the discriminatory conduct was not so severe or pervasive to unreasonably interfere with her work performance.[12] *Harris*, 510 U.S. at 371.  As Plaintiff cannot prove the conduct complained of was objectively severe or pervasive, her hostile work environment claim fails.

### iii.  *Plaintiff cannot prove respondeat superior liability*

Plaintiff also failed to demonstrate *respondeat superior* liability.  To establish *respondeat superior* on a claim for a hostile work environment, courts employ the "aided by the agency relation test[.]" *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 280 (3d Cir. 2001). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created **by a supervisor** with immediate (or successively) higher authority over the employee." *Id*. (emphasis added) (quoting *Faragher*, 524, U.S. at 807 (1998)).  "[A]n employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104-05 (3d Cir. 2009).  However, a supervisor has constructive notice of a hostile work environment "when 'an employee provides management level personnel with enough information to raise a probability of [ ] harassment [prohibited by Title VII] in the mind of a reasonable employer[.]'" *Huston*, 568 F.3d at 105 (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)).

The record demonstrates that *respondeat superior* liability cannot attach. Except for Captain Layfield, Plaintiff attributes all and sexual discriminatory conduct to non-supervisory

---

[12] The Written Reprimand Lt. DiSilvestro issued to Plaintiff is not an adverse action because it had no impact on her employment. A0717 at 348:15–349:24.  *See Fields v. Am. Airlines, Inc.*, 2023 WL 6391689, at *16 (E.D. Pa. Sept. 29, 2023).

employees.  Moreover, there is no record evidence of any complaint Plaintiff provided to her supervisors concerning gender discrimination to provide constructive notice.[13]  Accordingly, the record does not support that management level employees were provided enough information sufficient to "raise a probability of sexual harassment." *Huston*, 568 F.3d at 105.

Assuming *arguendo* that Captain Layfield created an actionable hostile work environment based on his handling of Plaintiff's complaints, DSP nevertheless cannot be found liable under *respondeat superior* because Plaintiff did not suffer a tangible adverse employment action when DSP took reasonable steps to redress the situation. *Faragher*, 524 U.S. at 807 (*respondeat superior* liability may be negated when employer takes steps to correct the action and plaintiff failed to take advantage of preventative or corrective opportunities or to avoid harm).  Notably, Plaintiff did not utilize the complaint procedure outlined in the Harassment Policy by filing reports with IA or Ms. Davis as the EEO/AA representative. *Enders/Maden v. Super Fresh*, 594 F. Supp. 2d 507, 514 (D. Del. 2009), *aff'd sub nom. Enders v. Super Fresh*, 346 F. App'x 829 (3d Cir. 2009) (employer not liable when an employee failed to avail herself to the formal complaint process).  Her inexcusable delay in pursuing her claims prejudices DSP such that the doctrine of laches applies because many of the individuals who are the subject of her claims no longer are employed by DSP, and the incidents she complains of are not evidenced by any documents.  *Heath v. City of Philadelphia*, 2021 WL 2661520, at *4 (E.D. Pa. June 29, 2021), *aff'd*, 2022 WL 4298123 (3d Cir. Sept. 19, 2022) (failure to prove excusable delay was not prejudicial to defendant does not reactivate untimely claims).  For these reasons, Plaintiff has failed to prove her hostile work environment claim.

---

[13] Plaintiff complained to Sgt. Hardy about MCpl. Smyk (A025), and also complained to Capt. Layfield about Lt. McColgan.  A0164–71. Nowhere in Plaintiff's emails does Plaintiff complain of gender discrimination. *Id*.

## II.    NO DISCRIMINATION BASED ON PLAINTIFF'S 2018 TRANSFER OR SEPARATION (COUNTS II AND III)

Plaintiff's claims for gender discrimination based on her 2018 Transfer and her separation from employment also fail.  Such claims are analyzed under the *McDonnell Douglas*[14] burden-shifting framework.  *See Taylor-Bray v. Delaware Dep't of Servs. for Child., Youth & Their Fams.*, 627 F. App'x 79, 82 (3d Cir. 2015).  To prove gender discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered from an adverse employment action; and (4) the adverse action was under circumstances that raise an inference of discrimination.  *Id*.  The primary focus rests on whether DSP treated Plaintiff less favorably than other because of her gender.  *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 798 (3d Cir.2003).

A transfer or reassignment is actionable under Title VII if it is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey,* 390 F.3d at 764 (3d Cir. 2004) (quotations omitted).  Such a transfer must also constitute "a significant change in employment status" and imposes "significantly different responsibilities." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Plaintiff was one of ten other supervisors transferred at that time and has proffered no evidence to show that her responsiblities at Troop 5 were significantly different from that of other supervisors or her previous assignment at Troop 4. *See Anderson v. Mercer Cnty. Sheriff Dep't*, 815 F. App'x 664, 667 (3d Cir. 2020) (finding that a transfer was not an adverse action when fifteen other officers were transferred at the same time and there was no evidence that plaintiff's responsiblities were significantly different).  Instead, the

---

[14] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

record is devoid of any evidence that the 2018 Transfer significantly change her employment status in any way.

Even if Plaintiff could make such a showing, she cannot rebut DSP's legitimate, non-discriminatory reasons for the 2018 Transfer.  In accordance with the Transfer Policy provided in the State Police manual, all uniformed employees may be transferred at any time to any location in Delaware, at the discretion of the Superintendent.  A001–02.  Moreover, the record shows that plaintiff was transferred due to operational needs, in the best interest of the Division and Plaintiff.

Similarly, Plaintiff cannot rebut DSP's legitimate, nondiscriminatory reason for separating her from her employment in accordance with the Disability Policy. Plaintiff's medical providers indicated Plaintiff was unable to perform the requirements of a full duty officer and that the probability for her to return to full duty did not exist.  Plaintiff cannot show that this legitimate reason was pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 763–65 (3d Cir.1994).  To show pretext, Plaintiff "must present evidence from which a reasonable factfinder could infer that the reason was 'a post hoc fabrication' or 'did not actually motivate the employment action.'" *Martinez v. Rapidigm, Inc.*, 290 F. App'x 521, 525 (3d Cir. 2008) (quoting *Fuentes*, 32 F.3d at 764.  Plaintiff has failed to do so.  Instead, Plaintiff relies on speculation and conjecture to support her claim.[15]   A0723.   Plaintiff proffered no evidence demonstrating any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would allow a reasonable finding that her separation from her employment was a pretext for gender discrimination. *Id.*

---

[15] Although courts "are required to draw every reasonable inference in favor of the party opposing summary judgment, they are not permitted to stack inference upon inference to preserve an issue for the jury," and "[i]nferences must be supported by facts in the record, not by "speculation or conjecture." *In re Asbestos Litig.*, 2019 WL 325130, at *6 (D. Del. Jan. 25, 2019), *report and recommendation adopted sub nom. Dove v. Boeing Co.*, 2019 WL 529890 (D. Del. Feb. 11, 2019).

Plaintiff cannot carry her burden of establishing her claim of gender discrimination in violation of Title VII, and therefore her claims fail.

### III.   NO RETALIATION BASED ON PLAINTIFF'S 2018 TRANSFER OR SEPARATION (COUNTS VI AND V)

Plaintiff's claims for retaliation based on her 2018 Transfer and Separation fail for similar reasons. To prove retaliation, Plaintiff must establish that (1) she was engaged in activity protected by Title VII; (2) she suffered an adverse employment action subsequent to or contemporaneously with such activity; and (3) a causal link between her participation in the protected activity and the adverse employment action. *Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 513 (D. Del. 2017). In the context of a Title VII retaliation claim, an "adverse employment action" is one that is "materially adverse" and would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529, 541 (D. Del. 2012). To establish causation, "[t]he protected activity must be the 'but-for' cause of the defendants' alleged retaliatory action." *Flores v. Danberg*, 84 F. Supp. 3d 340, 350 (D. Del. 2015).

First, Plaintiff cannot demonstrate that she engaged in a protected activity. Plaintiff alleges that she "opposed practices made illegal by Title VII and the DDEA."[16] But again, the record shows that none of Plaintiff's alleged complaints accuse anyone of, or even reference, gender discrimination. Accordingly, Plaintiff's complaints cannot qualify as protected activity. *See Eldridge v. Municipality of Norristown*, 2013 WL 811956, at *3 (3d Cir. Mar. 6, 2013) (finding an email was not protected activity because "it did not allege any discrimination"); *Flax v. Delaware*, 329 F. App'x 360, 364 (3d Cir. 2009) (concluding that complaint which did not expressly mention racial discrimination was not protected activity).

---

[16] D.I. 5 ¶ 217.

But even if Plaintiff's complaints about Captain Layfield or Lt. McColgan constituted protected activity, the record does not support that DSP took any adverse employment action against Plaintiff for making such complaints for the reasons argued above. Moreover, Plaintiff has produced no evidence demonstrating a "but for" causal link between the supposed adverse employment actions and her union grievance. It is not enough that the claimed adverse employment actions occurred within a few months of her union grievance. *See Lorah v. Tetra Tech, Inc.*, 541 F. Supp. 2d 629, 636 (D. Del. 2008) ("To be 'unusually suggestive' of retaliatory motive, the temporal proximity must be immediate."); *Conklin v. Warrington Twp.*, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009) ("[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.").

Even if Plaintiff established a *prima facie* case, she cannot rebut DSP's legitimate, non-retaliatory reasons for her 2018 Transfer and separation from employment, so her claims fail.

## IV.   PLAINTIFF'S STATE LAW CLAIMS FAIL

Plaintiff asserts violations of the DDEA on the same exact bases as her claims for Title VII violations. But having elected to pursue her claims in federal court, Plaintiff cannot maintain both the federal and state law claims. *See* 19 *Del. C.* § 714; *Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 481 (D. Del. 2010) ("The DDEA bars a plaintiff from simultaneously seeking remedies for employment discrimination under both federal and state law in federal court."); *Martinez v. Dep't of Homeland Sec./Div. of the State Police*, 2019 WL 1220305, at *1 n.1 (D. Del. Mar. 15, 2019) ("A plaintiff . . . may not seek relief under both Title VII and the Delaware state discrimination statute."). Thus, Plaintiff's DDEA claims must be dismissed.[17]

---

[17] Moreover, such claims fail for the same reasons as under Title VII. *See Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n.5 (3d Cir. 2015). Under 28 U.S.C. § 1367(c), this Court should not exercise supplemental jurisdiction over state law claims where federal claims fail.

## <u>CONCLUSION</u>

For the foregoing reasons, DSP respectfully requests that the Court grant its Motion for

Summary Judgment and dismiss the Complaint with prejudice.


Date: November 1, 2023

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

*/s/ Victoria R. Sweeney*
Victoria R. Sweeney, Esq. (#6586)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Victoria.Sweeney@delaware.gov
*Attorney for Defendant*

21