IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NICOLE L. HANTZ, | ) | |
| f/k/a NICOLE L. OLDHAM, | ) | C.A. No. 21-801-RGA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REDACTED** |
| | ) | |
| DIVISION OF STATE POLICE, | ) | |
| DEPARTMENT OF SAFETY & | ) | |
| HOMELAND SECURITY, | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERING BRIEF
IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**LaROSA & ASSOCIATES LLC**

<u>*/s/ John M. LaRosa*</u>
**JOHN M. LaROSA, ESQ.**
Delaware Bar No. 4275
1225 King Street, Suite 802
Wilmington, DE 19801-3246
(302) 888-1290 (telephone)
(302) 655-9329 (fax)
JLR@LaRosaLaw.com

Dated: November 22, 2023                    *Attorney for Plaintiff Nicole L. Hantz*

**TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

I.    A Female Pioneer with Positive Evaluations & No Discipline for 15 Years. . . . . . . . . 2

II.   Hostile Work Environment (2002-2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Non-Discrete Acts Over 300 Days Before the EEOC Charge (2002-2017). . . . . 3

      B.    Acts Less Than 300 Days Before the Charge (2018). . . . . . . . . . . . . . . . . . . . . .4

III.  Plaintiff's Protected Activity Before Her Attorney's Letter & EEOC Charge. . . . . . . . 4

      A.  Troop 7 (Apr. 2003-May 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.  CRU and Troop 7 (May 2007-Jan. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.  EPU (Jan. 2013-Oct. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.  Troop 4 (Nov. 2015-Oct. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   Acts of Discrimination Over 300 Days Before the Charge. (Oct. 2017-Nov. 2017) . . . . . 5

      A.  When Plaintiff Opposed Retaliation, McColgan Pushed Her Breasts. . . . . . . . . . . 5

      B.  Troop Commander & Assailant's Intervening Pattern of Antagonism: Cover Up,
          Harassment, & Discipline Caused Transfer & Constructive Discharge. . . . . . . . . . 5

          1.  False Accusations of Insubordination. . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

          2.  Layfield Allowed Assailant to Visually &
              Verbally Harass & Cease Communication. . . . . . . . . . . . . . . . . . . . . . . . . 6

          3.  Layfield Rehashed Past Tragedies & Suggested EAP. . . . . . . . . . . . . . . . . 6

          4.  Layfield Covered Up the Assault &
              Attacked Plaintiff's Fitness & Performance. . . . . . . . . . . . . . . . . . . . . . . . .6

i

V.      Discrete & Non-discrete Acts of Discrimination Less Than 300 Days Before Charge.  .  7

        A.  Plaintiff's Involuntary Transfer to Troop 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.  DSP Constructively Discharged Plaintiff by Forcing Her on Sick Leave. . . . . . . . . 8

            1.  False Accusation of Misconduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.  Unsatisfactory Evaluation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            3.  Alteration of Job Responsibilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            4.  Undesirable Assignment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.  Layfield Discredited Plaintiff & Illegally
            Disclosed Her ▮▮▮▮▮▮▮▮▮▮▮▮. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

        D.  DSP Terminated E-mail & Prevented Plaintiff from Requesting More Leave. . . . . .10

        E.  McQueen's Awareness of Protected Activity Before Actual Discharge . . . . . . . . . . 10

VI.     *Fuentes* Prong 1: *Contradictions & Inconsistencies* in DSP's Explanation. . . . . . . . . . . 10

        A.  McQueen *Contradicted* Policy by Deeming Plaintiff Permanently Disabled. . . . . . 10

        B.  McQueen Accommodated Sick *Men*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.  DSP's Practice is Not to Transfer Senior Patrol Sgts. . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.  Retaliatory Reprimand, Unsigned by Supervisor &
            Omitted from Her Review, *Contradicted* Her Record. . . . . . . . . . . . . . . . . . . . . . . 11

VII.    *Fuentes* Prong 2: Weight of the Evidence Demonstrates Discrimination. . . . . . . . . . . 12

        A.  Preferential Treatment of Plaintiff's Male Co-workers with Same Superiors. . . . . 12

            1.  Mitchell. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.  Assailant: No Reprimand or EAP Suggestion. . . . . . . . . . . . . . . . . . . . . . . . . . 12

            3.  Layfield Didn't Escalate Male Subordinate's Suicidal Ideation. . . . . . . . . . . . 12

    B. Temporal Proximity of Complaints & Reprimand. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C. McQueen Promoted Only Men When He Replaced Plaintiff with a Male. . . . . . . . .12

ARGUMENT (INCLUDING STANDARD OF REVIEW) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. A REASONABLE JURY CAN RETURN A VERDICT FOR
  PLAINTIFF BECAUSE SUFFICIENT EVIDENCE SUPPORTS
  HER HOSTILE ENVIRONMENT CLAIM.            . . . . . . . . . . . . . . . . . . . . 13

    A. The Continuing Violations Doctrine Allows Plaintiff to
       Recover for Acts Over 300 Days Before the EEOC Charge. . . . . . . . . . . . . . . . . . 13

    B. Plaintiff Established All Elements of this Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II. A REASONABLE JURY CAN RETURN A VERDICT FOR PLAINTIFF
  BECAUSE SUFFICIENT EVIDENCE SUPPORTS HER CLAIMS FOR SEX
  DISCRIMINATORY TRANSFER (COUNT II), AND TERMINATION (COUNT III). . 15

    A. Sex Discriminatory Transfer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1. Adverse Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2. The Transfer's Circumstances Gave
           Rise to an Inference of Sex Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3. Plaintiff Can Meet Her Ultimate Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           a. *Fuentes* Prong One: Defendant's Stated Reason(s)
              Are *Weak, Implausible, Incoherent, Inconsistent*, and *Contradicted*. . . . . . .16

           b. *Fuentes* Prong Two: The Weight of the Evidence
              Allows a Jury to Infer that Sex Was a Motivating or
              Determinative Cause of the Adverse Decisions.     . . . . . . . . . . . . . . . . . . 17

    B. Sex Discriminatory Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

III.   A REASONABLE JURY CAN RETURN A VERDICT FOR
    PLAINTIFF BECAUSE SUFFICIENT EVIDENCE SUPPORTS
    HER CLAIMS FOR RETALIATORY TRANSFER (COUNT IV),
    AND TERMINATION (COUNT V).         . . . . . . . . . . . . . . 18

    A. Retaliatory Transfer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        1. Protected Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

iii

     2.  Adverse Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     3.  Causal Connection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     4.  Plaintiff Can Meet Her Ultimate Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

  B.  Retaliatory Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    1.  Protected Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    2.  Adverse Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    3.  Causal Connection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      a.  Temporal Proximity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

      b.  Pattern of Antagonism. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

      c.  Evidence as a Whole. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    4.  Plaintiff Can Meet Her Ultimate Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.  JUSTICE REQUIRES PLAINTIFF BE ALLOWED TO MAINTAIN HER DDEA
    CLAIMS TO SEEK THE MAXIMUM AWARD ALLOWABLE UNDER THE LAW. . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE

## <u>TABLE OF CITATIONS</u>

<u>Page Number</u>

<u>CASES</u>

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Baker v. Consol. Rail Corp.*, 835 F.Supp. 846 (W.D.Pa. 1993),
    *aff'd*, 30 F.3d 1484 (3d Cir. 1994)                     . . . . . . . . . . . . . . . . . . . . . . . . 18

*Barber v. CSX Distrib. Servs*, 68 F.3d 694 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bouard v. Ramtron Int'l Corp.*, 2013 WL 5445846 (D.Colo. Sept. 27, 2013) . . . . . . . . . . . . . 20

*Burgess v. Dollar Tree Stores, Inc.*, 642 F.App'x 152 (3d Cir. 2016) . . . . . . . . . . . . . . . . . . . . .14

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Collins v. Illinois,* 830 F.2d 692 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dean v. Christiana Care Health Servs., Inc.*, 2013 WL 5176761 . . . . . . . . . . . . . . . . . . . . . . . 13
    (D.Del. Sept. 16, 2013) (Andrews, J.)

*EEOC v. Wyeth Pharm.*, 2004 WL 503417 (E.D.Pa. Mar. 11, 2004) . . . . . . . . . . . . . . . . . . .18, 19

*Esaka v. Nanticoke Health Servs., Inc.*, 752 F.Supp. 2d 476 (D.Del. 2010) . . . . . . . . . . . . . . . 21

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 15

*Hampton v. Borough of Tinton Falls Police Dep't,* 98 F.3d 107, 116 (3d Cir.1996) . . . . . . . . .19

*Hazen v. Mod. Food Servs., Inc.*, 113 F.App'x 442 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 18

*Hyland v. Smyrna Sch. Dist.*, 608 F.App'x 79, 82 (3d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . 14

*Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 15

*Kachmar v. Sunguard Data Systems, Inc.* 109 F.3d 173 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . 19

*Lehman v. Aramark Healthcare Support Servs., LLC*, 630 F.Supp. 2d 391 (D.Del. 2009) . . . . 18

*Lewis v. State of Del. Dep't of Pub. Instruction*, 948 F.Supp. 352 (D.Del. 1996) .. . . . . . . . . . .17

*Martinez v. Dep't of Homeland Sec./Div. of State* Police,
   2019 WL 1220305 (D.Del. Mar. 15, 2019)     . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

*Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . .19

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . .20

*Rodriguez v. Board of Educ.*, 620 F.2d 362 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sheridan v. E.I. du Pont de Nemours and Co.*, 100 F.3d 1061 (3d Cir. 1996) (en banc) . . . .16, 17

*Sorgini v. Wissahickon Sch. Dist.*, 274 F.Supp. 3d 291 (E.D.Pa. 2017) . . . . . . . . . . . . . . . . . . 18

*Suders v. Easton*, 325 F.3d 432 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Sumner v. United States Postal Serv.*, 899 F.2d 203 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . .19

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). . . . . . . . . . . . . . . . . . . . .16

*Torre v. Casio, Inc.*, 42 F.3d at 825 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Trout v. Hidalgo*, 517 F.Supp. 873 (D.D.C. 1981), *aff'd in part and
   rev'd in part sub nom. Trout v. Lehman*, 702 F.2d 1094 (D.C. Cir. 1983),
   *vacated on other grounds*, 465 U.S. 1056 (1984)     . . . . . . . . . . . . . 15

## **STATUTES AND RULES**

19 *Del. C.* § 714( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

19 *Del. C.* § 715(c)(5) (eff. Sept. 11, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

19 *Del. C.* at § 715(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 *U.S.C.* § 1981a(b)(3)(D) (eff. Nov. 21, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

DDEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Fed.R.Civ.P.* 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Title VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

## NATURE AND STAGE OF THE PROCEEDINGS

This is a Title VII and DDEA case of sex discrimination and retaliation for Plaintiff Nicole Hantz, a female Delaware State Police Sergeant, harassed in a hostile work environment, physically assaulted, involuntarily transferred to the locale where her brother recently was found dead on the roadside, forced out of work ██████████, and discharged by the Defendant Division of State Police because of her sex and in retaliation for her sex discrimination complaints.  Plaintiff sent Defendant a demand letter on July 5, 2018; and filed her EEOC Charge of Discrimination, (B1-3), on October 27, 2018; her Complaint (D.I. 1), on June 1, 2021; and her First Amended Complaint (D.I. 5, "FAC"), on July 14, 2021.  Defendant's motion to dismiss (D.I. 7), was denied on May 13, 2022 (D.I. 12).  After seven depositions,[1] discovery ended on September 27, 2023.  Defendant filed a summary judgment motion (D.I. 51), and brief (D.I. 52), on November 1, 2023.  This is Plaintiff's answering brief in opposition to the motion.

## SUMMARY OF THE ARGUMENT

A reasonable jury can return a verdict for Plaintiff because sufficient evidence supports her five claims enumerated in Argument §§ I-III:

I.      Hostile work environment because of sex (Count 1);

II.     Sex discriminatory transfer (Count 2), and termination (Count 3); and

III.    Retaliatory transfer (Count 4), and termination (Count 5).

As explained in Argument § IV, Plaintiff must maintain her DDEA claims to seek the highest recovery of compensatory and punitive damages allowable under the Law.

---

[1] Plaintiff deposed former Department of Safety and Homeland Security Secretary Lewis Schiliro and the Division of State Police's Colonel from 2012 to 2019, Nathaniel McQueen, Jr. and its current Captain Rodney Layfield and Lieutenant Mentino DiSilvestro and former Lieutenant John McColgan and Sergeant J.B. Mitchell.  Defendant deposed Plaintiff.

## STATEMENT OF FACTS

Plaintiff Nicole Hantz was employed by Defendant from 2002 to 2018.  Pl. at 13.[2]

Defendant Division of State Police, Department of Safety & Homeland Security ("DSP") is a

Delaware agency, covered under Title VII and the DDEA.  FAC & Answ. at ¶¶ 10-11; B6, 36.[3]

## I.    A Female Pioneer with Positive Evaluations, Awards, Commendations, & No

**Discipline for 15 Years.**  In 2007, Plaintiff was the first female in the Crash Reconstruction Unit

("CRU").  Def. Supp. Resp. to Interrog. No. 8; A343.[4]  In 2011, (Answ. at ¶ 23, B38), she was

her Academy Class's first Sergeant. ("Sgt.").  Def. Supp. Resp. to Interrog. No. 9; A344.

Governor Markell selected her to head his Executive Protection Unit ("EPU"), (FAC & Answ. at

¶ 25, B7, 38; McQueen at 88),[5] from January 13, 2013 to October 18, 2015.  A14.  From then

(Answ. at ¶ 28, B38), through February 7, 2018, (Pl. at 397), she led Troop 4's B-Shift and

supervised 2016's Trooper of the Year.  Pl. at 249-50, Def. Resp. to Interrog. No. 7; A332.  She

received many awards and commendations, (*see, e.g.*, Answ. at ¶ 21, B37), and only favorable

evaluations.  *See* Pl. at 33.  Before November 2017, she never was disciplined.  DiSilvestro at

149-150, 251.

---

[2] Deposition citations are to the Plaintiff ("Pl.") or the deponent's last name.

[3] Plaintiff cites to the documents in volumes 1 and 2 of her Appendix as B1, etc.  To limit
duplication in the record, Plaintiff cites to documents in the Appendix to Defendant's Opening
Brief in Support of its Motion for Summary Judgment (D.I. 53) as A1, etc.

[4] There, she displayed, "████████████████████████████████████████
████████████████████████████████████████████████████" ███.

[5] Plaintiff was a candidate proposed by the prior Colonel and not by Colonel McQueen.
McQueen at 88-89, 91.  In the EPU, she was a very efficient leader.  Schiliro at 18.

II.     **Hostile Work Environment (2002-2018).**  The discrimination included involuntary transfer, constructive discharge, actual discharge, and non-discrete acts as follows:

**A.  Non-Discrete Acts Over 300 Days Before the EEOC Charge (2002-2017).**

1.      **Troop 7:** Vandalism of Plaintiff's patrol vehicle, (Pl at 157-58, McQueen at 168, McColgan at 291-92), mailbox, (Pl. at 155), and uniform hat, (Pl. at 161-64), between June 2001 and approximately 2007;

2.      Trooper ███████ false e-mail that Plaintiff conducted a stop with her child in the car and was car jacked in 2002, (*see* Pl. at 124-25, 129, ██), and other incidents of harassment by him from 2002 to July 2011, (Pl. at 36, 132, 135-36, 140);

3.      **CRU:** Sgt. Barry Dean's disparities in death notifications (*Cf.* Pl. at 168, 173, and Mitchell at 13-17, 22-24), and harassment beginning in May 2007, (Pl. at 177-79);

4.      The sexually harassing photo and message that Plaintiff gave oral sex to Delaware's Speaker of the House to gain her EPU job in January 2013, (Pl. at 142-44);

5.      **EPU:** Denial of the free housing benefit for male EPU officers from January 2013 to October 2015, (Pl. at 200-02);

6.      Corporal ("Cpl.") Jim Rossi's sexual advances and touching from January to August 2013, (Pl. at 214, 221, 224-29, McQueen at 41-42, 44);

7.      DSP's preventing her from teaching defensive tactics to troopers in 2014, (Pl. at 383-85);

8.      Major ("Maj.") Evans' telling her a false rumor of her having relations with Kevin Becker, (Pl. at 391-92), and threatening her career would end when she requested a transfer from EPU in October 2015, (Pl. at 385-86);

9.      **Troop 4:** Captain ("Capt.") Rodney Layfield's understaffing of the female-led shifts of Plaintiff (B-Shift) and her female peer Amanda Yeager (A-Shift) in 2015, (Pl. at 238-39, 390-91, McColgan at 39, 43, 47-48, ██);

10.     Layfield's allowance of Sgt. Mitchell's false rumors around November 2016, that she was reassigned from EPU because she slept with her male subordinates and now worked on the road to have sex with others, (Pl. at 246-48, 259-60), and Layfield's joke about female Sgt. Yeager (Mitchell at 96, 100-01, 188, ██);

11.     ███████████████ written harassment in October 2017, and badmouthing her to ████████████ (██, McColgan at 82, Layfield at 66, 68);

3

12.     McColgan detaining Plaintiff (but not Mitchell) after the October 26, 2017 Sergeants' Meeting after they both complained about his e-mails' tone and phrasing, (DiSilvestro at 225, 257, Layfield at 281, McColgan at 145, Pl. at 258, 285-86);

13.     McColgan's October 2017 physical, verbal, and visual harassment (*see infra* Parts IV.A, B.1-2.);

14.     Layfield's intervening pattern of antagonism (between Plaintiff's protected activity and transfer) beginning on October 27, 2017, (*see infra* Parts IV.B.1-4).

       **B.  Acts Less Than 300 Days Before the Charge (2018).**  *See infra* Parts V.A-E.

**III.**    **Plaintiff's Protected Activity Before Her Attorney's Letter & EEOC Charge.**

       **A.  Troop 7 (Apr. 2003-May 2007).**  Plaintiff reported sex-based harassment by Steve Smyk and others to her supervisors: Sgts. Ken Hardy and Barry Dean, (Pl. at 124-34, 138, 144-45, 147), and Lts. Ron Hagan and George Chamberlin (█████).

       **B.  CRU and Troop 7 (May 2007-Jan. 2013).**  Plaintiff reported vandalism to her vehicle, mailbox, and uniform hat to Sgts. Hardy and Dean, (Pl. at 159-60).

       **C.  EPU (Jan. 2013-Oct. 2015).**  She reported sexual harassment by Cpl. Jim Rossi to Colonel McQueen, Governor Markell, and First Lady Markell. Pl. at 214, 221, 224, 226.

       **D.  Troop 4 (Nov. 2015-Oct. 2017).**  In 2015, she informed Capt. Layfield and Lt. McColgan of the understaffing of the female-led shifts and asked for all shifts to have equal members. ████.  Around November 2016, Plaintiff reported to Layfield and confronted Mitchell about his false rumors that she slept with her EPU subordinates and now worked on the road to have sex with more males.  Pl. at 248, 259-60.  In October 2017, she e-mailed Layfield about McColgan's derogatory, belittling e-mails, (████), complained to them that McColgan treated her more harshly after she rejected his brother's romantic advances, and told Layfield she wanted McColgan disciplined for pushing her in the chest.  *See infra* Parts IV.A, B.1-2.

**IV.    Acts of Discrimination Over 300 Days Before the Charge (Oct. 2017-Nov. 2017).**

**A.  When Plaintiff Opposed Retaliation, McColgan Pushed Her Breasts.**  On October 27th, Plaintiff went to McColgan for clarification on warrant attempts, but the more she asked, the more defensive he got.  Pl. at 287-88.  Eventually, she complained he was treating her more harshly after she rejected his brother's romantic advances.  DiSilvestro at 212.  She told him the only reason you're doing this is because I rejected your brother.  *Id.* at 61-62.[6]

Really upset, McColgan said, "You crossed the line.  Don't bring my brother into this." Pl. at 289.  "That's it.  It's over.  Get out of here.  Get out of my office[!]" Pl. at 298.  He pointed for her to go.  Pl. at 298-99.  She was in the walkway to leave the room, facing him, the door behind her and said, "I don't understand what you're so upset about." Pl. at 297, 300-01.  His mouth was "foaming," and he was "big time angry[.]" Pl. at 315-16.  He pushed her in the center of the chest, (*id.*), making contact with her breasts.  Pl. at 406.  <u>McColgan has not pushed any male Sergeants.</u>  FAC & Answ. at ¶ 136; B21, 45.

**B.  Troop Commander & Assailant's Intervening Pattern of Antagonism: Cover Up, Harassment, & Discipline Caused Transfer & Constructive Discharge.**

**1.  False Accusations of Insubordination.**  Plaintiff made serious accusations: being pushed and treated differently by McColgan because she rejected his brother.  Layfield at 96, *accord id.* at 87, Pl. at 306, 404-05.  Layfield said if she didn't back off, she could be guilty of Insubordination! Layfield at 100-01, *accord* Pl. at 304.  She said if she was written up, she wanted McColgan written up because he pushed her in the chest.  Pl. at 304-05.  Layfield said,

---

[6] Late one night in October 2017, McColgan's brother, Trooper "Danny Mack[,]" (Mitchell at 141), was drunk, calling, sad about his divorce, and asked Plaintiff on a date.  Pl. at 292, 405. She rejected his romantic advances.  DiSilvestro at 44, *accord* ███, Pl. at 293.

"Don't go pulling *the female card*." *Id.*  McColgan wasn't addressed.  Pl. at 320.[7]

### 2.  Layfield Allowed Assailant to Visually & Verbally Harass & Cease

**Communication.**  Layfield met with McColgan, DiSilvestro, and Plaintiff that day.  Layfield at 89-90.  She accused McColgan of treating her differently because she rejected his brother; he disagreed.  Layfield at 91-92.  McColgan spread his legs and grabbed his crotch.  Pl. at 312.  She pointed, scoffed, and said, "You're going to let him do that[?]" *Id.*  Layfield put the hand up.  Pl. at 313.  Then, McColgan told her his life is so good he can't even give away enough and if she feels he's coming to work to try to attack her or send her e-mails, "Don't flatter yourself." Pl. at 313-14, 414; *see also* Layfield at 92, McColgan at 240-41 (not denying it).  Then, he announced he'd have no more direct communication with her.  DiSilvestro at 88-89.

### 3.  Layfield Rehashed Past Tragedies & Suggested EAP.  Dismissing

McColgan and DiSilvestro, (Layfield at 94), Layfield ordered Plaintiff to stay.  Pl. at 317.  He brought up her friend Chad Spicer's murder; Cpl. Maat's wife's death; her CRU history of death notifications; her brother's July 4, 2016 death; and her 2016 divorce.  Pl. at 171, 407-09, *accord* Layfield at 380.  He said that was enough to make anybody need a break and switch Troop and she should contact EAP.  Pl. at 408, 411.  She was crying, but he kept asking questions. Layfield at 118-19.  "[T]here was not a lot of complaints ... from her after those meetings." *Id.* at 384.

### 4.  Layfield Covered Up the Assault & Attacked Plaintiff's Fitness &

**Performance.**  On October 27th, Layfield informed Maj. Sean Moriarty ("the Major") that

---

[7] McColgan wanted her charged with insubordination and conduct unbecoming; she wasn't.  Pl. at 304.  Instead, she received her first career discipline the next month. *See infra* Part IV.B.4.

Plaintiff complained of McColgan's "ignorant e-mails" and treating her differently because she asked his brother to stop calling her but did not mention that McColgan pushed her! *See* ████ ████. Layfield proposed a fitness for duty evaluation ("FFDE") on November 7th. *See* Layfield at 135, 165-66. Instead, ████████ directed he document concerning incidents, especially related to Plaintiff's work-performance. ███, Layfield at 138. At that point, he wasn't having work-performance concerns with her. *Id.* at 138-39.

Nevertheless, Layfield brought DiSilvestro a November 6th domestic she handled, and took issue with her work quality. DiSilvestro at 90, Layfield at 164.[8] His November 13th request for DiSilvestro to investigate was less than a month after her October 16th complaint to Layfield about ignorant emails. *Id.* at 166-67. Layfield recommended an official reprimand for her. *Id.* at 157. The November 20th reprimand was less than a month after the Sgts.' meeting where she protested McColgan's ignorant emails. *Id.* at 166. Then, Layfield reported to Wood and Moriarty "we have" a documented discipline. *Id.* at 163.[9] She never was disciplined before by Layfield, (*id.* at 162), or anyone. DiSilvestro at 251. Layfield painted a picture to make Admin want to change her Troop when she did nothing wrong. Pl. at 331.

**V.      Discrete & Non-discrete Acts of Discrimination Less Than 300 Days Before Charge.**

**A.  Plaintiff's Involuntary Transfer to Troop 5,** was announced on January 29, 2018. Layfield at 202. There was no deficiency at Troop 5, requiring only Plaintiff be transferred

---

[8] It was Layfield's first issue with her work on a criminal case. Layfield at 154. In Plaintiff's discretion, she determined not to arrest. DiSilvestro at 143. However, she did not shortcut the investigation; she added a higher charge. Pl. at 420.

[9] Yet, Layfield decided McColgan wouldn't be charged with conduct unbecoming, and there was not talk about EAP or FFDE for him. Layfield at 137, 313, 383.

there. McQueen at 137. DSP alleges it was done to "███████" between Plaintiff and the
Troop 4 Administration and give Plaintiff a fresh start. ███████. Layfield didn't deny
proposing the transfer, (*see* Layfield at 195), nor express displeasure when telling DiSilvestro
that she'd be transferred from his troop. DiSilvestro at 181-82. In January, he called on her
vacation and told her of her Troop 5 transfer. Pl. at 359, Answ. at ¶ 155; ███. He said the
Administration there "was *more like her*." Pl. at 387.[10]

### B. DSP Constructively Discharged Plaintiff by Forcing Her on Sick Leave.

**1. False Accusation of Misconduct.** *See supra* Part IV.B.1. Insubordinate falls in
line with unsatisfactory performance and can be defined as misconduct. Layfield at 102-03.

**2. Unsatisfactory Evaluation.** Her reprimand was an evaluation of unsatisfactory
job performance. *See* Layfield at 161-62, *accord* McQueen at 124-25.

**3. Alteration of Job Responsibilities.** McQueen changed her job responsibilities
by transfer to Troop 5. McQueen at 132, Layfield at 202. Troop 4 is "unique" and a "Super
Troop." McColgan at 13.[11] Troop 5 was not; it was strictly patrol. *Id.* at 13, 24.[12]

**4. Undesirable Assignment.** Before separating her, McQueen learned Plaintiff
didn't want to go to Troop 5, (McQueen at 149), the Sussex County Troop farthest from

---

[10] The Administration there was female: the Captain and one of two Lieutenants. Pl. at 387-88.

[11] Troop 4 houses the Governor's Task Force, criminal and drug investigations, the school
resource officers, and units and detectives for fraud, property, major crimes, and evidence
detection. McColgan at 12, 13, 22-23, 29.

[12] Troop 5 includes Bridgeville, Laurel, and Seaford. McQueen at 366. Troop 4 patrolled
Georgetown, Selbyville, Dagsboro, Frankford, North Bethany, South Bethany, and Fenwick.
DiSilvestro at 20-21.

home.[13]  A year and a half earlier, Layfield knew her brother was found dead on the roadside in

Troop 5, near Bridgeville.  Layfield at 114-16, 206-07, 213-14.  Very upset, (*id.* at 204), she

requested Layfield ask the Executive Staff to reconsider.  *Id.* at 205, 207.  Though she never said

this, (Pl. at 425), he told the Major she was "refusing" to go.  Layfield at 208.[14]

       Layfield took from her how much she loved being a Trooper.  Pl. at 331.  On February 9,

2018, she went out for ████████████████.  Pl. at 365.  She e-mailed her ██████████

to Layfield and HR.  FAC & Answ. at ¶ 163; ████████████.

**C.  Layfield Discredited Plaintiff & Illegally Disclosed Her ██████████**

████████.  Layfield provided DiSilvestro her ██████ and joked about the office not

being a legitimate ██████ facility.  DiSilvestro at 195-96.  He called and asked Lt. Colonel

Monroe Hudson if he was aware of her note submission, (Layfield at 260-61), and told him, "I

think it's a dietician." *Id.* at 262-63.  Hudson questioned it, and Layfield tried to *forward* him it.

*Id.* at 264.  Instead, on February 9th, at 5:36 p.m., he texted *Plaintiff* her attachment and wrote,

"████████████." ████.  Plaintiff didn't see a diet doctor.  Pl. at 425-26.[15]

---

[13] From Plaintiff's home: ██████████████████████, (████), it is ███ miles and
█ minutes to Troop 4: 23652 Shortly Road, Georgetown, DE 19947, (B55); ███ and █ minutes
to Troop 7: 19444 Mulberry Knoll Road, Lewes, Delaware 19958, (B56); and ██████ and █
minutes to Troop 5: 9265 Public Safety Way, Georgetown, DE 19933.  B55.  *See*
https://www.mapquest.com/directions (last visited Nov. 8, 2023).

[14] Reconsider and refuse are two different things.  Layfield at 209.  Layfield painted her as
insubordinate.

[15] He also texted, "████████████████████████
██████." Layfield at 259.  This was a lie.  He already confirmed this earlier.  *Id.*

### D. DSP Terminated E-mail & Prevented Plaintiff from Requesting More Leave.

DSP terminates troopers' e-mail after they retire.  McQueen at 176, Layfield at 277.  Yet, she was removed from the email system months before termination.  Pl. at 399.  If she had state e-mail, she could've requested more leave from fellow officers.  McQueen at 174, 248.[16]

### E. McQueen's Awareness of Protected Activity Before Actual Discharge.

In July 2018, the Lt. Colonel informed McQueen that Plaintiff retained an attorney who sent the Cabinet Secretary ████ and that she raised legal claims against DSP.  McQueen at 159-60, ████.  At that time, McQueen read it, (McQueen at 162), and was aware she raised harassment, sex discrimination, and hostile work environment claims.  *Id.* at 161.  McQueen decide to separate her, (*id.* at 306), by ████, (*id.* at 189-90), ████ on Halloween 2018.  *Id.* at 225; A305-06.

## VI. *Fuentes* Prong 1: *Contradictions & Inconsistencies* in DSP's Explanation.

### A. McQueen *Contradicted* Policy by Deeming Plaintiff Permanently Disabled.



In ███████████, McQueen stated that ██████████████████.  DSP policy is ██████████████████████████████; McQueen at 195.  McQueen had discretion to approve leave for up to two years.  *Id.* at 203, ████████.  Yet, he separated her before her leave was exhausted.  McQueen at 238, 244, 306.  DSP doesn't determine if a disability is temporary.  *Id.* at 311-12.  Instead, by ████, DSP considers ██████████████████████.  *Id.* at 259; ████████.  Yet, McQueen deemed Plaintiff permanently disabled.  McQueen at 261.

### B. McQueen Accommodated Sick *Men*.

As Colonel, he saw employees return after 18

---

[16] Several employees on leave without enough sick or AT time, including ██████████████, could email and solicit time from other employees to extend their time out.  Pl. at 398-99.

months or so.  *See* McQueen at 285.[17]  Yet, Plaintiff wasn't allowed that time to heal and return.

Pl. at 427.  He separated her approximately eight months after medical leave began.  Pl. at 396.

**C. DSP's Practice is Not to Transfer Senior Patrol Sgts.**  Among all sergeants in

Sussex County, Plaintiff was the most senior Sergeant.  *See* ████████████.  Most senior

Sergeants "████████." (IA Interview of A. Brumbley, Recording ████████████),

unless they ask for a change.  *Id.* at ████████.  Sergeants moving from one patrol troop to

another is not normal.  *See* IA Interview of L. Skinner, ████████████ at ████████.

**D. Retaliatory Reprimand, Unsigned by Supervisor & Omitted from Her Review,**

***Contradicted* Her Record** of outstanding quantity and quality of work.[18]  DiSilvestro handed

Plaintiff her reprimand but didn't sign it.  Pl. at 418-19.[19]  Typically, formal discipline is in the

evaluation, (Layfield at 245-46), but DiSilvestro didn't include it.  *Id.* at 393; *see* ████████.

---

[17] Around ████, ████████████ ████████████ was on medical leave more than once, for over a year, and was allowed to return and go out again before his retirement. ████████████.  ████████████ was on medical leave over five times and allowed to return each time before he retired.  *Id.* at ████.  ████████████ was on stress or mental health leave approximately three months and allowed to return to work for the ████████████, used up his available sick and compensatory time until separated, and ████ was out an extended time for mental health but allowed to return. ████

[18] *See* DiSilvestro at 170; ████ (She "████████████" in an "████████████") Previously, her CRU harasser Sgt. Dean admitted, "████████████" (████), her "████████████" are "████████" and "████████████" ████; *but see* ████████████ (████████████).

[19] DiSilvestro's claim he signed it electronically, (DiSilvestro at 150-51), is ***contradicted*** by four witnesses.  *See* Pl. at 415, 417; *accord* Mitchell at 197, McColgan at 272-73; ████; and Layfield at 158 (testifying Layfield and Deputy Superintendent Monroe Hudson signed it).  McQueen ***contradicted*** himself by saying it's a ████████████, (McQueen at 118-19), and then it's not a requirement for DiSilvestro to sign.  *Cf. id.* at 340-41.

11

**VII.** *Fuentes* **Prong 2: Weight of the Evidence Demonstrates Discrimination.**

   **A. Preferential Treatment of Plaintiff's Male Co-workers with Same Superiors.**

      **1. Mitchell.** After heated disagreements, McColgan didn't detain, push, or cease communication with Mitchell. *See supra* Parts II.A.12, and IV.A, B.2.[20] DSP let both men consume all allowable sick, vacation, and compensatory time on terminal leave.[21] Unlike Plaintiff's request for reconsideration, <u>Mitchell lived in Troop 4, wanted to return there</u> for convenience, <u>and made this preference known, and that transfer happened.</u> Mitchell at 143-44; *see* ███████████████████████████████████████████).

      **2. Assailant: No Reprimand or EAP Suggestion.** *See supra* n.9.

      **3. Layfield Didn't Escalate Male Subordinate's Suicidal Ideation.** Plaintiff told Layfield ██████████ put a gun in his mouth, and she texted him ████ photo doing this, but Layfield didn't report it, request a FFDE, nor suggest EAP, (Pl. at 354-58, 393-94, Layfield at 46-47), as he did for her though she never did such things. *See id.* at 282, 234-35, 382.

   **B. Temporal Proximity of Complaints & Reprimand.** *See supra* Part IV.B.4.

   **C. McQueen Promoted Only Men When He Replaced Plaintiff with a Male.** On January 29, 2018, <u>McQueen promoted two men</u> to Sergeants: Senior Cpl. Andrew Gatti and Master Cpl. Christoper Sutton, <u>and no women.</u> McQueen at 138-39.[22] Gatti, a brand-new

---

[20] Mitchell never got talked to or discipline. Mitchell at 73. McColgan or Layfield never told him McColgan wouldn't communicate with him directly. McColgan at 250. Also, in the CRU, Mitchell received better treatment from Sgt. Dean. *See* Statement of Facts, *supra* Part II.A.3.

[21] DSP paid troopers accrued leave approximately for a year or more before retirement. McQueen at 177-78. Mitchell was paid for 11 months. Mitchell at 13. McColgan will be paid for 600, 500, and 440 hours of sick, vacation, and compensatory time. McColgan at 314.

[22] In 2018, DSP's 725 officers included 95 females. Def. Resp. to Interrog. No. 24; A340.

Sergeant, (Layfield at 192-93), who never was a supervisor, (DiSilvestro at 222), replaced Plaintiff, who <u>was Layfield's only Sergeant transferred at this time</u>.  Layfield at 192, 196-97.

## ARGUMENT

"Th[is C]ourt shall grant summary judgment [only] if the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." *Dean v. Christiana Care Health Servs., Inc.*, 2013 WL 5176761, at *1 (D.Del. Sept. 16, 2013) (Andrews, J.) (denying summary judgment) (sex discrimination and retaliation) (citing *Fed.R.Civ.P.* 56(a)).  It "may not grant summary judgment if a "reasonable jury could return a verdict for the nonmov[ant].'" *Martinez v. Dep't of Homeland Sec./Div. of State Police*, 2019 WL 1220305, at *6 (D.Del. Mar. 15, 2019) (citation omitted).  "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury ... to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citation omitted).

## I.  A REASONABLE JURY CAN RETURN A VERDICT FOR PLAINTIFF BECAUSE SUFFICIENT EVIDENCE SUPPORTS HER HOSTILE ENVIRONMENT CLAIM.

### A.  The Continuing Violations Doctrine Allows Plaintiff to Recover for Acts Over 300 Days Before the EEOC Charge.

The Court can "consider[] the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, [to] assess[] liability, ... so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  Here, all of the acts constituting the hostile environment claim, (*see* Statement of Facts, *supra* Parts II.A-B), are part of the same unlawful practice: DSP's sex discrimination against Plaintiff compared to her similarly situated male co-workers.  Further, several acts fall within the 300-day time period.

13

*See id.* at Parts V.A-E.  This was all part of the persistent, ongoing pattern of sex discrimination exhibited by Layfield and the men at Troop 4, since October 2015.  *See id.* at Parts II.A.9-14.  That in turn was part of DSP's persistent, ongoing pattern of sex discrimination of her from Trooper Smyk in Troop 7 in 2002, to Maj. Evans when she left EPU in October 2015.  *See id.* at Parts II.A.1-8.  Thus, Plaintiff's hostile work environment claim is not time barred.

   **B.  Plaintiff Established All Elements of this Claim.**  To allege a prima facie case of hostile work environment under Title VII and the DDEA, a plaintiff must "show (1) the employee suffered intentional discrimination because of [he]r sex; (2) the discrimination was pervasive and regular; (3) [and] detrimentally affected the plaintiff; (4) [and] would detrimentally affect a reasonable [woman] in that position; and (5) … *respondeat superior* liability." *Burgess v. Dollar Tree Stores, Inc.*, 642 F.App'x 152, 154-55 (3d Cir. 2016) (citation and quotation marks omitted).[23]  First, there is ample evidence that the discrimination was because of sex.  *See, e.g.,* Statement of Facts, *supra* Parts II.A.1-14, II.B, and VI.B, VII.A.1-3, and all underlined facts and italicized statements in Parts IV.A, B.1; V.A, V.D's n.17, VI.D, and VII.C.  In particular, Smyk, Dean, Rossi, Layfield, McColgan, and McQueen did not harass men like they harassed Plaintiff.  *See id.*  The discrimination was pervasive and regular: The incidents were not isolated, there were no lengthy gaps of years, and they were not limited to mere comments.  They occurred at each of her last four job sites: Troop 7, CRU, EPU, and Troop 4, with men ranking from Trooper to Colonel.  *See id.* at Parts II.A-B.  They detrimentally affected Plaintiff because they led to her involuntary transfer, ███████████████████████████████████████, and resulted

---

[23] The evidence needed under the DDEA is generally the same as under Title VII.  *Hyland v. Smyrna Sch. Dist.*, 608 F.App'x 79, 82 (3d Cir. 2015).

14

in her constructive and actual discharge.  Her positive reviews are no defense to harassment!

Finally, *respondeat superior* liability exists because supervisors with higher authority were aware

of the harassment and engaged in it.  Those aware included Sgts. Hardy and Dean; Lts. Hagan,

Chamberlin, and McColgan; Capt. Layfield; Maj. Moriarty; Lt. Colonel Hudson; and Colonel

McQueen.  *See id.* at Parts III.A-D, IV.B.1-2, and V.E.  Those whose engaged included Sgt. Dean,

Lt. McColgan, Capt. Layfield, Maj. Evans, and Colonel McQueen.  *See id.* at Parts II.A-B.

## II.  A REASONABLE JURY CAN RETURN A VERDICT FOR PLAINTIFF BECAUSE SUFFICIENT EVIDENCE SUPPORTS HER CLAIMS FOR SEX DISCRIMINATORY TRANSFER (COUNT II), AND TERMINATION (COUNT III).

To state a prima facie case of non-pay related sex discrimination under Title VII and the

DDEA, a plaintiff must allege that (1) she is a member of a protected class, (2) an adverse

employment action was taken against her, and (3) [that action's] circumstances … give rise to an

inference of discrimination.  *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d

Cir. 2000).  Regarding element one, Plaintiff is a female.  FAC & Answ. at ¶ 203; B30, 49.

### A.  Sex Discriminatory Transfer.

#### 1.  Adverse Action.   Federal courts find undesired or undesirable transfers to be

adverse actions.[24]  Transfers can establish the prima facie case's adverse action.  *Jones v. Sch.*

*Dist. of Philadelphia*, 198 F.3d 403, 411-12 (3d Cir. 1999) (Title VII) (teacher assigned to

---

[24] *See Torre v. Casio, Inc.*, 42 F.3d at 825, 831 n. 7 (3d Cir. 1994) (ADEA) (recognizing a transfer may constitute adverse action); *Rodriguez v. Board of Educ.*, 620 F.2d 362, 364–66 (2d Cir. 1980) (Title VII sex discrimination claim) (adverse action established where "severe professional ... trauma" resulted from a difference *in* "the [employee's work] site … and [her pupils'] age[s] "); *Trout v. Hidalgo*, 517 F.Supp. 873, 890 n. 67 (D.D.C. 1981) (Title VII sex) ("removal of [employee's] office to an undesirable location" was a discriminatory action), *aff'd in part and rev'd in part sub nom. Trout v. Lehman*, 702 F.2d 1094 (D.C. Cir. 1983), *vacated on other grounds*, 465 U.S. 1056 (1984).

classes he regarded as less desirable).  Like *Jones*, Plaintiff regarded her reassignment from Super Troop 4 to Troop 5, less desirable.  *See* Statement of Facts, *supra* Part IV.B.4.  Thus, Plaintiff established an adverse action in her discriminatory transfer claim.

**2.   The Transfer's Circumstances Gave Rise to an Inference of Sex Discrimination.**  *See id.* at Parts IV.A-B.4, VI.C-D, and VII.A-C.  Thus, Plaintiff has established her prima facie case of sex discriminatory transfer.  An employee's prima facie case creates a presumption of the employer's discriminatory intent.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

**3.   Plaintiff Can Meet Her Ultimate Burden.**  After the prima facie showing, the employer must proffer "a nondiscriminatory reason" for its adverse action.  *Sheridan v. E.I. du Pont de Nemours and Co.*, 100 F.3d at 1061, 1065-66 (3d Cir. 1996) (en banc).  "[W]hen the defendant answers the ... prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *Sheridan*, 100 F.3d at 1061.  Here, Plaintiff can proceed under either prong.

**a.  *Fuentes* Prong One: Defendant's Stated Reason(s) Are *Weak, Implausible, Incoherent, Inconsistent*, and *Contradicted*.**   Under prong one, "plaintiff[s] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them 'unworthy of credence.'" *Sheridan*, 100 F.3d at 1072.  All the trial court must

determine is "whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible[.]" *Id.* "But once the court is satisfied that the evidence meets this threshold requirement, it may not pretermit the jury's ability to draw inferences from the testimony, including the inference of intentional discrimination drawn from an unbelievable reason proffered by the employer." *Id.*

Here, there are **weaknesses**, **implausibilities**, **inconsistencies**, **incoherencies**, or **contradictions** in Defendant's version of the case, such that a reasonable jury could find it unworthy of belief. *Fuentes*, 32 F.3d at 765. *See* Statement of Facts, *supra* Part VI.A-E. Thus, the prima facie showing, joined with disbelief, permits the jury to return a verdict of discrimination. *Sheridan*, 100 F.3d at 1071.

> **b.   *Fuentes* Prong Two: The Weight of the Evidence Allows a Jury to Infer that Sex Was a Motivating or Determinative Cause of the Adverse Decisions.**  This prong requires evidence that "allows the factfinder to infer discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. Specifically, "discriminatory ... statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination.'" *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995). Here, such evidence exists. *See* Statement of Facts, *supra* Parts IV.B.1 and V.A. Alternatively, "[s]uch evidence could consist of showing the employer has discriminated against plaintiff or a protected class in the past." *Lewis v. State of Del. Dep't of Pub. Instruction*, 948 F.Supp. 352, 359 (D.Del. 1996) (citations omitted). *See* Statement of Facts, *supra* Parts II.A.14, and IV.A-B.4. Additional prong two evidence exists. *See id.* at Parts

VII.A-C.  Thus, the weight of the evidence allows a jury to infer Plaintiff's sex was more likely than not a motivating or determinative cause of her transfer.

**A.  Sex Discriminatory Termination.**  Regarding the prima facie case, Plaintiff suffered adverse action because she was constructively discharged when forced on leave on February 9, 2018.  *See* Statement of Facts, *supra* Part V.B.1-4.[25]  Alternatively, she was actually discharged.  *See id.* at Part V.E.  Again, the circumstances give rise to an inference of sex discrimination.  *See id.* at Parts IV.A-B.4, V.A-E, and VI.A-D.  Thus, Plaintiff established her prima facie case.  Finally, Plaintiff can meet her ultimate burden.  *See id.* at Parts IV-VII.C.

III.   **A REASONABLE JURY CAN RETURN A VERDICT FOR PLAINTIFF BECAUSE SUFFICIENT EVIDENCE SUPPORTS HER CLAIMS FOR RETALIATORY TRANSFER (COUNT IV), AND TERMINATION (COUNT V).**

For a prima facie case of retaliation, plaintiff must allege "(1) protected employee activity; (2) adverse action by the employee either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and her employer's adverse action." *Hazen v. Mod. Food Servs., Inc.*, 113 F.App'x 442, 443 (3d Cir. 2004).[26]

**A.  Retaliatory Transfer.**

**1.  Protected Activity.**  An *internal* complaint is a protected activity.  *EEOC v.*

---

[25] Situations "indicative of constructive discharge" include "[1] involuntary transfer to a less desirable position; [2] alteration of job responsibilities; [and 3] unsatisfactory job evaluations." *Suders v. Easton*, 325 F.3d 432, 445 (3d Cir. 2003).  Another indication of constructive discharge is "[4] false accusations of … misconduct." *Sorgini v. Wissahickon Sch. Dist.*, 274 F.Supp. 3d 291, 297-98 (E.D.Pa. 2017) (quoting *Baker v. Consol. Rail Corp.*, 835 F.Supp. 846, 852 (W.D.Pa. 1993), *aff'd*, 30 F.3d 1484 (3d Cir. 1994)).  All four of these situations occurred here.  *See* Statement of Facts, *supra* Parts V.B.1-4.

[26] DDEA retaliation claims "should be analyzed using the same framework." *Lehman v. Aramark Healthcare Support Servs., LLC*, 630 F.Supp. 2d 388, 391 (D.Del. 2009).

*Wyeth Pharm.*, 2004 WL 503417, at *2 (E.D.Pa. Mar. 11, 2004); *Barber v. CSX Distrib. Servs*, 68 F.3d 694, 701-702 (3d Cir. 1995).  "A complaint need not be written or formal to be protected[.]" *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (protected activity includes "informal protests of discriminatory employment practices, including making complaints to management").  Here, Plaintiff made informal complaints, orally and by e-mail. *See* Statement of Facts, *supra* Parts III.A-D.

    **2.  Adverse Action.**  Retaliation requires that a "reasonable employee would have found the challenged action materially adverse ... mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination[.]" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted).  Again, these actions include transfers.  *See supra* Part II.A.1.  Under Title VII, appointment to an undesirable police assignment is sufficient to withstand summary judgment on a retaliation claim. *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998) (citing *Hampton v. Borough of Tinton Falls Police Dep't,* 98 F.3d 107, 116 (3d Cir.1996)); *accord Collins v. Illinois,* 830 F.2d 692, 703 (7th Cir. 1987) (adverse action may consist of change in location).  Thus, Plaintiff established adverse action here.

    **3.  Causal Connection** can be proven three ways: 1) "temporal proximity between the employee's protected activity and the adverse … action[,]" 2) "circumstantial evidence of a pattern of antagonism following the protected conduct[,]" or 3) "the proffered evidence, looked at as a whole[.]" *Kachmar v. Sunguard Data Systems, Inc.* 109 F.3d 173, 177 (3d Cir. 1997) (internal quotation marks and citations omitted).  Here, a **pattern of antagonism** exists

following the protected conduct.  *See* Statement of Facts, *supra* Parts IV.B.1-4.  Alternatively, the **evidence**, looked at **as a whole**, raises the inference of causation.  *See id.* at Parts IV.A-V.C.

       **4. Plaintiff Can Meet Her Ultimate Burden.**  For *Fuentes* prong one, *see id* at Part V.A, VI.C.  For prong two, *see id.* at Parts IV.A-B.4, V.A, VI.C-D, and VII.A-C.

    **B. Retaliatory Termination.**

      **1. Protected Activity.**  Along with her complaints before the transfer, ████████ ████████████████ from ████████ is protected activity.  *Bouard v. Ramtron Int'l Corp.*, 2013 WL 5445846, at *4 (D.Colo. Sept. 27, 2013) (holding protected opposition occurred when plaintiff's counsel sent a letter to employer's CEO stating plaintiff was subjected to unlawful discrimination in violation of Title VII as well as retaliation for her complaint of discrimination.) (pay); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (attorney's letter to management was protected activity).  *See* Statement of Facts, *supra* Parts III.A-D and V.E.

      **2. Adverse Action.**  *See* Argument, *supra* Part III.A.2.

      **3. Causal Connection.**

        **a. Temporal Proximity.**  Regarding constructive discharge, *See* Statement of Facts, *supra* Parts IV.A-V.B.4.  Regarding the actual discharge, *see id.* at Part V.E.

        **b. Pattern of Antagonism.**  Regarding constructive discharge, *see id.* at Parts IV.B.1-4.  Regarding the actual discharge, *see id.* at Parts IV.B-V.E.

        **c. Evidence as a Whole.**  *See id.* and Parts II-VII.C.  Thus, Plaintiff established causation for retaliatory termination in three ways.

      **4. Plaintiff Can Meet Her Ultimate Burden.**  For *Fuentes* prong one, *see id.* at Parts VI.A-E.  For prong two, *see id.* at Parts II-VII.C.  In sum, there is sufficient evidence to

support the retaliatory termination claim.

## IV.  JUSTICE REQUIRES PLAINTIFF BE ALLOWED TO MAINTAIN HER DDEA CLAIMS TO SEEK THE MAXIMUM AWARD ALLOWABLE UNDER THE LAW.

Plaintiff must be allowed to pursue her DDEA claims.  Title VII and DDEA remedies are not identical.  Title VII remedies against employers with over 500 employees include compensatory damages, future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, other nonpecuniary losses, and punitive damages, all subject to a statutory cap of $300,000.  42 *U.S.C.* § 1981a(b)(3)(D) (eff. Nov. 21, 1991).  However, against the same size employer, the DDEA allows an award of compensatory and punitive damages, subject to a cap of $500,000.  *Cf.* 19 *Del. C.* § 715(c)(5) (eff. Sept. 11, 2023).  (For retaliation, the DDEA also authorizes a fine of $1,000 to $5,000.  19 *Del. C.* at § 715(d)).  Plaintiff does not seek a double recovery for her federal and state claims.  Rather, she merely seeks the maximum award allowable under the Law.  Defendant cites a statute merely prohibiting her from pursuing Title VII and DDEA claims simultaneously in two courts, (*see* 19 *Del. C.* § 714( c)), and two cases predating DDEA's 2023 increase of its statutory cap: In *Esaka v. Nanticoke Health Servs., Inc.*, that plaintiff offered to dismiss his state law claims.  752 F.Supp. 2d 476, 481 (D.Del. 2010).  Plaintiff here makes no such offer.  In *Martinez v. Dep't of Homeland Sec./Div. of State* Police, that plaintiff intended to proceed only on his Title VII claim.  2019 WL 1220305, at *1, n.1 (D.Del. Mar. 15, 2019).  Plaintiff here indicates no such intent.  Thus, provided there is no double recovery, justice requires that Plaintiff maintain her DDEA claims to seek the maximum award of compensatory and punitive damages allowable under the Law.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion should be denied in its entirety.

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICOLE L. HANTZ,                          )
f/k/a NICOLE L. OLDHAM,                   )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      C.A. No. 21-801-RGA
                                          )
DIVISION OF STATE POLICE,                 )
DEPARTMENT OF SAFETY &                    )
HOMELAND SECURITY,                        )
STATE OF DELAWARE,                        )
                                          )
            Defendant.                    )

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION

1.      This document complies with the type, font, and word limitations set forth in

Judge Andrews's Standing Order Regarding Briefing in All Cases of December 9, 2019, as

modified by the ORDER FOR PAGE EXTENSION (D.I. 56), issued on November 6, 2023, and

2.      It has been prepared in Times New Roman, 12-point typeface using MicroSoft

Word.

3.      It contains 6,655 words which were counted by MicroSoft Word.

**LaROSA & ASSOCIATES LLC**

*/s/ John M. LaRosa*
**JOHN M. LAROSA, ESQUIRE**
Delaware Bar No. 4275
1225 King Street, Suite 802
Wilmington, DE 19801-3246
(302) 888-1290
(302) 655-9329 (fax)
JLR@LaRosaLaw.com

Dated: November 22, 2023                *Attorney for Plaintiff Nicole L. Hantz*

ii